### Railroad Commission of Texas v. Weld & Neville et al.

#### No. 1081. Decided March 10, 1902.

**1.—Final Judgment—Determining Rights—Enforcement.**

A judgment which terminates the action in which it is rendered and completely disposes of the case as to all the parties, so far as the court has power to do so, is a final judgment. It is not essential to its finality that it provide for enforcing the rights determined, where the action is only for determining them. (Pp. 282, 283.)

**2.—Same—Appeal—Suit Against Railroad Commission.**

In an action brought under articles 4565, 4566, Revised Statutes, for determining the reasonableness and justice of a rate or regulation established by the Railroad Commission, the only issue presented is, are the rates, etc., put in issue by the pleading, as applied to the character of shipments alleged, unjust and unreasonable? The jurisdiction of the court is limited to the determination of that issue, and its decree settling it is a final judgment, from which appeal will lie. (Pp. 279-283.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

Weld & Neville and others sued the Railroad Commission of Texas,. and obtained judgment, from which defendant appealed.    The appeal. having been dismissed because the judgment appealed from was held not final, the Railroad Commission obtained writ of error.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant Attorney-General, for plaintiff in error.

*Gregory & Batts* and *Hutcheson, Campbell & Hutcheson,* for defendants in error.

BROWN, ASSOCIATE JUSTICE.—Under articles 4565 and 4566 of the Revised Statutes, Weld & Neville and others not necessary to name instituted this suit in the District Court of the Twenty-sixth District, Travis County, against the Railroad Commission of Texas to have certain rates fixed by the commission and certain orders, rules, and regulations adopted by it in reference to the shipment of cotton declared to be unreasonable and unjust as to the petitioners.    A very brief statement of the case will be sufficient for the decision of the question presented by this writ of error.

The plaintiffs' petition is elaborate in its allegations, of which we give the following summary:    It is alleged that the Railroad Commission established and promulgated a rate and certain rules and regulations for the transportation of cotton upon railroads within this State, which rules and regulations were particularly set out by the petitioners, and, among others, it was alleged that upon cotton compressed to a density of 22 pounds to the solid foot, the said regulations provided for a reduction in the rate of charges allowed to railroad companies for transportation, and provided for compression of cotton before shipment, with specific provisions governing the compressing of it.    It is alleged that the regulations were made with reference to the system of compressing and handling cotton which was then and had been long in vogue in the State of Texas, of which method specific details are given and its disadvantages alleged.

Plaintiffs alleged that they are interested in one of several improved and economical methods of handling cotton which had been put into successful operation in the State of Texas, in which they used the Lowry press, which the petition describes particularly, showing its supposed advantages in preparing the cotton for shipment in many respects.    It is alleged that the annual crop of cotton in Texas is about 3,000,000 bales, and the petition sets out with particularity the difficulties, expenses, and delays which prevailed in the transportation of cotton prepared under the old methods, and attempts to show the advantages of the Lowry system over that formerly in use.    It is charged that the rates of freight allowed to the railroad companies for the transportation of cotton when the density of the bale is 40 pounds or more to the solid foot and the rules and regulations governing the same are unreasonable

and unjust as to plaintiffs, who applied to the Railroad Commission to reduce the rate on cotton compressed at the gin to a density of 40 or more pounds to the solid foot, which the commission refused to do, and it is alleged that the order by which they refused to comply with the request is unjust and unreasonable as to the petitioners. The petition prays for relief upon the several points alleged and asks that the commission be required to establish reasonable rates. It is unnecessary to set out the answer of the defendant, which consisted of general demurrer, special exceptions, general denial, and special answers. The case was submitted to the judge without a jury, and, upon hearing the testimony, the following judgment was entered, omitting that portion which states the ruling of the court upon questions of law raised by the demurrers and exceptions:

"And on the 13th day of June, 1901, the court having fully considered the matters of law, as well as of fact, is of the opinion that the law and the facts are with the plaintiffs.

"It is therefore adjudged by the court that the present classifications and freight rates established by defendant applicable to transportation of cotton, whereby the same rate of freight is required to be charged and paid for transportation on the various railroads in this State on cotton in round bales, 18 inches in diameter, 36 inches in length, and weighing 240 pounds or over per bale, and having a density of 40 pounds or over to the cubic foot; and of cotton in bales of the ordinary form, compressed to a density of 22½ pounds to the cubic foot, are, as to the plaintiffs, Dorance, Cairns & Co., a partnership composed of J. M. Dorance and A. C. Cairns; Hasler & Boyd, a partnership composed of S. O. Hasler and W. W. Boyd, D. M. Howard, T. G. Cole; Weld & Neville, a partnership composed of Stephen M. Weld, Chas. W. Ide, George W. Neville, Alfred R. Weld, Edward M. Weld and James F. McGowan; Hillsboro Gin Company; Peoria Gin Company; Clemma Gin Company, and Wharton Gin and Milling Company, unjust and unreasonable.

"It is further adjudged by the court that the refusal, on December 17, 1900, by defendant to establish a different and lower rate of freight on cotton in such round bales, of the dimensions and density aforesaid, for transportation of the same on the various railroads in this State than the rate established and required to be paid for such transportation on cotton in bales of ordinary form, compressed to a density of 22½ pounds to the cubic foot, is and was, as to plaintiffs, unjust and unreasonable.

"It is further adjudged by the court that none of the reasons assigned by defendant in its refusal of December 17, 1900, to establish a different and lower freight rate on cotton in round bales and of the dimensions and density aforesaid than on cotton in bales of the ordinary form, compressed to a density of 22½ pounds to the cubic foot, could properly be taken into consideration by defendant in determining the question of a proper classification of and proper freight rate on such round bales.

"It is further considered and ordered by the court that the plaintiffs, Dorance, Cairns & Co., Hasler & Boyd, D. M. Howard, T. G. Cole, Weld & Neville, Peoria Gin Company, Clemma Gin Company, Hillsboro Gin Company, and Wharton Gin and Milling Company, do have and recover of and from the Railroad Commission of Texas all the costs of this suit."

From this judgment the Railroad Commission appealed to the Court of Civil Appeals for the Third District, which appeal was dismissed because the judgment entered by the District Court was not a final judgment from which an appeal would lie.

The law which created the Railroad Commission of Texas is based upon article 10, section 2, of the Constitution of Texas, which reads as follows: "Railroads heretofore constructed or which may hereafter be constructed in this State are hereby declared public highways and railroad companies common carriers. The Legislature shall pass laws to regulate railroad freight and passenger tariffs, to correct abuses, and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this State, and enforce the same by adequate penalties, and, to the further accomplishment of these objects and purposes, may provide and establish all requisite means and agencies invested with such powers as may be deemed adequate and advisable." The law was passed and its enforcement was intrusted to the Railroad Commission, with powers expressed by the following article of the Revised Statutes: "Art. 4562. The power and authority is hereby vested in the Railroad Commission of Texas, and it is hereby made its duty, to adopt all necessary rates, charges, and regulations to govern and regulate railroad freight and passenger tariffs, the power to correct abuses and prevent unjust discrimination and extortion in rates of freight and passenger tariffs on the different railroads in this State, and to enforce the same by having the penalties inflicted as by this chapter prescribed through proper courts having jurisdiction.

"1. The said commission shall have power, and it shall be its duty, to fairly and justly classify and subdivide all freight and property of whatsoever character that may be transported over the railroads of this State into such general and special classes or subdivisions as may be found necessary and expedient.

"2. The commission shall have power, and it shall be its duty, to fix to each class or subdivision of freight a reasonable rate for each railroad subject to this chapter for the transportation of each of said classes and subdivisions."

To support the rates, charges, orders, rules, regulations, and classifications which the Railroad Commission should make under the authority conferred, the law provided as follows: "Art. 4564. In all actions between private parties and railway companies brought under this law, the rates, charges, orders, rules, regulations, and classifications prescribed by said commmission before the institution of such action shall be held conclusive and deemed and accepted to be reasonable, fair and

just, and in such respects shall not be controverted therein until finally found otherwise in a direct action brought for that purpose in the manner prescribed by articles 4565 and 4566 of this chapter."

This article denied to railroad companies and other persons interested the right to question the validity and justice of the rates, etc., that the commission should make in any suits between individuals and the railroads, because such a course would have involved every action in the complications of making rates and would practically have denied redress. In order to secure a proper revision and correction by judicial proceeding of any wrong that might be done to shippers or railroads, the Legislature enacted articles 4565 and 4566, as follows:

"Art. 4565. If any railroad company or other party at interest be dissatisfied with the decision of any rate, classification, rule, charge, order, act, or regulation adopted by the commission, such dissatisfied company or party may file a petition setting forth the particular cause or causes of objection to such decision, act, rate, rule, charge, classification, or order, or to either or all of them, in a court of competent jurisdiction in Travis County, Texas, against said commission as defendant. Said action shall have precedence over all other causes on the docket of a different nature and shall be tried and determined as other civil causes in said court. Either party to said action may appeal to the appellate court having jurisdiction of said cause and said appeal shall be at once returnable to said appellate court, at either of its terms, and said action so appealed shall have precedence in said appellate court of all causes of a different character therein pending; provided, that if the court be in session at the time such right of action accrues, the suit may be filed during such term and stand ready for trial after ten days' notice.

"Art. 4566. In all trials under the foregoing article, the burden of proof shall rest upon the plaintiff, who must show by clear and satisfactory evidence that the rates, regulations, orders, classifications, acts, or charges complained of are unreasonable and unjust to it or them."

These articles provide an expeditious method for determining the reasonableness and justice of any rate, order, rule, or regulation which the commission might make, and at the same time permit the enforcement of the rates, etc., until the judgment of a court declaring them to be unjust and unreasonable has been rendered.

This action was brought under articles 4565 and 4566, above quoted, and the court was therefore confined to the provisions of those articles in entering its judgment and granting relief. The only issue which was presented in this suit was—are the rates, rules, and orders put in question by the pleading, as applied to the character of shipments alleged in the pleadings, unjust and unreasonable? The jurisdiction of the court is limited to the determination of that issue.

There can be no difference of opinion as to the legal proposition that a judgment which terminates the action in which it is rendered and completely disposes of the case as to all the parties, so far as the court has power to do so, is a final judgment. 1 Freem. n Judg., sec. 34; 1

Black on Judg., sec. 21; Railway v. Railway, 68 Texas, 108; Belt v. Davis, 1 Cal., 139; Merle v. Andrews, 4 Texas, 200; McFarland v. Hall, 17 Texas, 690.

The subject matter of litigation in this case was fully disposed of by the judgment of the court when it was found that the rates and rulings complained of were, as to the plaintiff's in that case, unjust and unreasonable. Whatever may be the legal effect of the judgment, the court was not required to enforce it in this suit. If the court had the authority to enforce the judgment, it refused to do so and that would make it final.

In the case of Belt v. Davis, before cited, a suit was brought to set aside a judgment entered in a former suit, and, upon a hearing, the court simply entered the order setting the judgment aside and granting a new trial. The objection was made that this was not a final judgment, upon which the court said: "The whole scope and object of the suit, therefore, is to vacate the judgment and procure a new trial; and whether this should, or should not be done, is the point upon which the issue of the parties is made up. That issue has been finally and definitely determined by the District Court, and there is, consequently, no further judgment to be rendered in the suit. This particular cause is completely at an end, and whether the judgment be affirmed or reversed, nothing more remains for the District Court to do in this suit but to issue execution against the unsuccessful party for the costs." This case announces very clearly the true doctrine upon this question. Under our practice, that would not be a final judgment because another trial would occur in the same suit. But the case illustrates the rule that the judgment need not dispose of or determine the rights of the parties in the subject of litigation.

The case of McFarland v. Hall, cited above, a suit for partition of land, is well in point. The trial court ascertained the rights of the parties in the subject matter but did not declare the legal consequences by divesting and vesting title. It was contended that the judgment was not final, but this court held the judgment to be final and entertained the appeal. The court said: "The principal question upon this appeal is, whether the decree of the 12th of October, 1854, was final and conclusive of matters therein adjudicated. It certainly determined all the issues of fact raised by the pleadings; it distinctly ascertained and adjudicated the rights of the parties and settled definitely their respective interests in the subject matter of the suit. It put an end to all matter in litigation in the case. After it was rendered nothing remained but to carry it into effect or execute the judgment of the court. This would seem to bring it within the legal definition of a final judgment."

We are of opinion that the judgment of the District Court is a final judgment and fully disposes of the rights of the parties in this suit, and that the Court of Civil Appeals erred in dismissing the appeal from said judgment. It is therefore ordered that the judgment of the Court

of Civil Appeals dismissing the said appeal be and the same is hereby reversed and this cause is remanded to the said Court of Civil Appeals of the Third Supreme Judicial District for further proceedings herein.

*Reversed and remanded to the Court of Civil Appeals.*