### WEST TEXAS COMPRESS & WAREHOUSE CO. v. PANHANDLE & S. F. RY. CO. et al. (No. 1199—5204.)

Commission of Appeals of Texas, Section A. March 27, 1929.

Bean & Klett, of Lubbock, for plaintiff in error.

Callaway & Reed, of Dallas, Madden, Adkins & Pipkin, of Amarillo, Roscoe Wilson, of Lubbock, Terry, Cavin & Mills, of Galveston, and Coates & Mastin, Cecil N. Cook, and John N. Jackson, all of Fort Worth, for defendants in error.

CRITZ, J. This is an injunction suit originally instituted by West Texas Compress & Warehouse Company, hereinafter designated plaintiff, in the district court of Lubbock county, Tex., against Panhandle & Santa Fé Railway Company, hereafter designated the railroad, and Lubbock Compress Company. By agreement of the parties, the Texas Compress Association was permitted to intervene. Also the Attorney General of Texas appeared in the Court of Civil Appeals and in this court amici curiæ and for the railroad commission.

The petition of the plaintiff is as follows:

"Now comes the West Texas Compress and Warehouse Company, a private corporation organized and existing under and by virtue of the laws of the State of Texas, with its general office and principal place of business in the City and County of Lubbock, State of Texas, complaining of the Panhandle & Santa Fé Railway Company, a private corporation, organized and existing under and by virtue of the laws of the State of Texas, with its general office in the City of Amarillo, Potter County, Texas, with a line of railway running through Lubbock County, Texas, where it does business as a common carrier of goods for hire, and of the Lubbock Compress Company, a private corporation, organized and existing under and by virtue of the laws of the State of Texas, with its general office and principal place of business in the City of Fort Worth, in Tarrant County, Texas, both the companies herein complained of being called defendants; and as cause of action plaintiff represents to the Court:

"That the plaintiff is and has been for several years in the business of receiving, compressing, storing and shipping cotton for pay in the City of Lubbock, Texas; and that the defendant Lubbock Compress Company is and has been engaged in a similar business during said period just outside the City limits.

"That the plaintiff and defendant Lubbock Compress Company are and have been competitors in the aforesaid business, and that the plaintiff is and has been doing and enjoying a large volume of business; that the plaintiff has promptly complied with all laws and regulations and is lawfully entitled to engage in the aforesaid business; that it promptly and faithfully performs its duties and is ready, willing and able to take care of all business tendered it; but that the defendants have formed and entered into an unlawful conspiracy to wrong, injure and damage the plaintiff, and the plaintiff's business, and to defraud and discriminate against the plaintiff and the plaintiff's business, by agreeing and undertaking, the plaintiff alleges and believes, to prevent cotton shipped and consigned for compress by plaintiff, and to prevent the plaintiff receiving the pay for such service, and on the contrary divert and transfer such business to plaintiff's competitor, to wit, the Lubbock Compress Company, so that the latter company may do such compression and receive said fees.

"That the defendants are engaged in such unlawful practice and are carrying out such agreement, and that there are now in defendant's shipping yards at Lubbock, Texas, two carloads of cotton, to wit, Car No. LV-5623 and Car No. B & O 267592, that were shipped by the Texas Farm Bureau Association from Levelland, Texas to the Texas Farm Bureau at Houston, Texas, for compression in transit at the West Texas Compress and Warehouse Company, at Lubbock, Texas; that the plaintiff is ready, willing and able to receive said cotton and compress the same as it should be compressed; but that the defendant refuse to let the plaintiff have said cotton, but on the contrary declare that the cotton will be compressed, and the fees received by the Lubbock Compress Company, which fees in the particular case will amount to some $45.00 or $50.00.

"That it appears that the defendants have entered into the aforesaid conspiracy and are

threatening to carry out the same with reference to other cotton, compression of which will probably run into many thousands of bales, the compression fees of which are about $1.00 per bale.

'[T]hat it further appears that notwithstanding the fact that the Texas Farm Bureau desires and intends for its cotton to be compressed by plaintiff, nevertheless the defendants are undertaking to prevent such cotton belonging to said Bureau from being compressed by plaintiff; that the cotton that plaintiff will likely receive for compression for said Bureau during the present season will probably amount to ten thousand bales or approximately $10,000.00.

"That the practice as aforesaid will continue and the plaintiff will suffer irreparable damages unless the defendants and each of them are restrained from interfering with cotton shipped intended or marked for compression by plaintiff; that the plaintiff will likely suffer damages in the sum of $10,000.00 or more, unless your Honor's most gracious writ of injunction is granted; the plaintiff being without any other adequate remedy at law. That for a fuller statement of facts on which this petition is based, plaintiff's exhibits A, B, C, D, and E are hereto attached and made a part hereof, and are to be sworn to.

"Wherefore, plaintiff prays that temporary, as well as permanent injunction issue in its favor, restraining the defendants and each of them from preventing plaintiff from compressing cotton that is consigned for compression by plaintiff, and that they be further restrained from diverting such cotton, or any cotton, to the Lubbock Compress Company; that on final hearing such injunction be made permanent; also that said R. Co. be restrained from refusing to issue or accept bills of lading marked to be compressed in transit at West Texas Warehouse & Compress Co., and that the plaintiff have such other and further relief to which it may be entitled, either in law or equity."

Attached to said petition, and made a part thereof, are Exhibits A, B, C, D, and E. We do not think it necessary to state the contents of the exhibits.

The petition was presented to the district judge, and he indorsed thereon his fiat, granting the injunction as prayed for, on the giving of bond, etc.

The bond provided for was duly filed, and writ of injunction issued.

Both defendants and intervener filed various pleas, answers, and motions to dissolve the temporary injunction. Upon hearing, the trial court ordered the temporary injunction dissolved. From this order the plaintiff appealed to the Court of Civil Appeals for the Seventh District, at Amarillo, which court affirmed the judgment of the district court. 7 S.W.(2d) 597. The cause is now before this court on writ of error granted on application of the plaintiff.

As shown by the various answers, and affidavits of the defendants and intervener, this suit involves the following rule or order of the railroad commission of Texas, with reference to the shipment and compression of cotton, on through bills of lading:

Rule 2. "A shipper desiring his cotton delivered at destination compressed, shall give to the railroad company notice of such desire by inserting in his bills of lading the notation, 'to be compressed', and it shall be the duty of the railroad company accepting the shipment to comply with such instructions by having said cotton compressed at origin, in transit or at destination. The railroad companies shall make an allowance of five working days within which the compress companies shall receive, compress, and redeliver to the railroad companies cotton which is to be compressed."

In construing the above and similar antecedent rules bearing on the same subject, the railroad commission of this state has, for many years, uniformly officially construed it to give to the railroad company the right to designate and select the compress at which the cotton is to be compressed either at origin, in transit, or at destination. Since the commission is an instrumentality of the state, exercising delegated powers, its orders are of the same force as would be a like enactment by the Legislature. It therefore follows that the interpretation officially placed on the order or rule by the commission becomes a part of the rule. Further, the rule is susceptible of no other interpretation.

The question as to whether the railroad commission of Texas has been delegated the power and authority to regulate the compression of cotton in transit by common carrier is no longer an open question, as it has been passed on by our Supreme Court several times. The first case pointed out to us arose in the district court of Travis county shortly after the commission had promulgated a complete set of rules and regulations governing the compression of cotton in transit. The railroads were dissatisfied with such rules, and appealed to the district court of Travis county in the manner prescribed by present article 6453, R. C. S., and obtained a judgment from the district court holding that the commission was without such power or authority, and that the regulations as made were invalid and void. This case was duly appealed by the commission to the Court of Civil Appeals for the Third District at Austin, and the opinion of that court is reported in Railroad Commission v. H. & T. C. Ry. Co., 16 Tex. Civ. App. 129, 40 S. W. 526, 1052. However, while the case was still pending in the Court of Civil Appeals, that court certified questions to the Supreme Court. The Supreme Court, in answering such certified

questions, held that the railroad commission had jurisdiction and authority to make and enforce regulations with reference to the compression of cotton in transit, similar in many respects to the above rule, and that the act of the Legislature conferring such power was constitutional. Railroad Commission, etc., v. H. & T. C. Ry. Co., 90 Tex. 340, 38 S. W. 750. We refer also to the holding of the Supreme Court in the cases of Railroad Commission, of Texas v. Weld & Neville, 96 Tex. 394, 73 S. W. 529.

There is no doubt in our minds that rule 2, above quoted, taken on its face, and especially when viewed in the light of the interpretations placed thereon by the railroad commission, requires the railroad companies to have cotton compressed when shipped by through bill of lading, at some point designated in the rule, when the bill of lading contains the notation, "to be compressed." There is further no doubt that the railroad commission has for many years officially interpreted this rule to give the railroads the right to select its own agent to compress such cotton.

Under article 6452, R. C. S. of Texas 1925, it is provided: "Art. 6452. In all actions between private parties and railway companies brought under this law, the rates, charges, orders, rules, regulations and classifications prescribed by the Commission before the institution of such action shall be held conclusive, and deemed and accepted to be reasonable, fair, and just, and in such respects shall not be controverted therein until finally found otherwise in a direct action brought for the purpose in the manner prescribed by the two succeeding articles."

By the imperative terms of the above-quoted statute, which has many times been held to be valid and constitutional by the Supreme Court of this state, the rules, regulations, rates, etc., of the railroad commission are deemed to be reasonable, fair, and just, unless, and until, set aside in a direct proceeding brought for that purpose as prescribed by articles 6452, 6453, and 6454, R. C. S. 1925. The rule quoted is certainly not void as the commission has power and authority to make such rules. If, for any reason, it is unfair or unjust, which question we do not pass on, such matters will have to be called in question and litigated in the manner and in the court prescribed by law; that is, in a district court of Travis county, with the railroad commission made party to the suit. Railroad Commission v. Weld, 95 Tex. 278, 66 S. W. 1095, M. K. & T. Ry. Co. of Texas et al. v. Railroad Commission (Tex. Civ. App.) 3 S.W.(2d) 489.

■ By the plain and unambiguous language of article 6453, R. C. S. 1925, it is provided that, if any railroad company or other party at interest is dissatisfied with any rate, classification, rule, etc., adopted by the railroad commission, such dissatisfied party may file his petition, etc., in a court of competent jurisdiction in Travis county, against the commission as defendant. This statute is exclusive in its very nature. A construction that it is not exclusive would violate all known rules of statutory construction, and lead to chaotic conditions with reference to the proceedings, rules, etc., of the commission. Certainly in the face of such provisions as are contained in articles 6452 and 6453, supra, collateral attacks on orders, rules, etc., of the commission cannot be tolerated.

■ The issues of this case, as made by the record, clearly involve a collateral attack on rule 2 of the railroad commission of Texas, and as such it cannot be maintained in any court in this state, as the rules of the commission, unless absolutely void, are not subject to collateral attack at all. Under articles 6452, 6453, and 6454, R. C. S. of Texas 1925, the only court having original jurisdiction to set aside, annul, or in any manner modify, a rule of the commission, is the district court of Travis county, and that in a direct proceeding brought for that purpose, with the railroad commission made a party.

In passing on this case we have only considered the issues raised in the petition with reference to future shipments of cotton, and not as to the two carloads already shipped belonging to Texas Farm Bureau Association, for the reason that the answer of the Lubbock Compress Company shows this cotton has long since been compressed. Further, we hardly think it would be proper to tie this cotton up in an injunction subject to the delays of this litigation, when the owner who must suffer by the delay is not even a party to the suit.

The Court of Civil Appeals, with reference to future shipments of cotton, holds: "It appears from the record that the two cars of cotton described in the petition were accepted for shipment by the defendant Railway Company and that it issued a bill of lading with the notation thereon by the shipper that it was to be compressed at the appellant's compress. It is apparent that the appellant had the right to require the cotton designated in the bill of lading to be compressed at its compress, as it was the beneficiary under the contractual agreement—that is, the bill of lading so accepted by the defendant railway. But as to the future shipments of cotton, no such contractual relationship existed that would authorize the interposition of a court of equity, as the petition for the injunction did not show any outstanding contractual relationships with shippers, then in existence. This is not a suit by a shipper to compel the recognition of his right to have the cotton compressed at a compress of his own choice, but is, in effect, a suit to require the delivery to it (except as to the two cars) of cotton which may hereafter be shipped under direction of the shipper for compression by it. This contractual condition may not again arise."

The commission does not pass on the cor-

rectness of the above holding, for the reason that, since, in our opinion, this suit is not properly brought, it is not necessary to pass on any other question.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.