## COMMUNITY NATURAL GAS CO. v. NATURAL GAS & FUEL CO.

### No. 7495.

Court of Civil Appeals of Texas. Austin.

Nov. 26, 1930.

McCartney & McCartney, of Brownwood, and Karl F. Griffith and Roy C. Coffee, both of Dallas, for appellant.

Woodruff & Holloway, of Brownwood, John S. Redditt, of Lufkin, and C. E. Garner, of Little Rock, Ark., for appellee.

McCLENDON, C. J.

Suit by Natural Gas & Fuel Company against Community Natural Gas Company (for brevity designated respectively fuel and Community Companies), to enjoin the latter from charging domestic gas consumers in the city of Brownwood rates lower than the maxima fixed in its franchise. The Lone Star Gas Company was joined as party defendant. From a judgment in a trial to the court without a jury, awarding the injunction as prayed for, the Community Company has appealed.

The record shows the following pertinent facts: In 1927, both the Community and fuel companies acquired properties of other concerns operating in the city of Brownwood. The predecessors of the Community Compa-

ny had been in the field since about 1912; and in 1927 furnished about 2,700 domestic consumers. The predecessors of the fuel company entered the field some eight or ten years later and supplied mainly commercial and industrial consumers, having only a small number of domestic patrons. The predecessors of each corporation operated under separate franchises, providing schedules of rates. Only domestic rates are involved in this suit, and are alluded to in this opinion. For convenience we use the abbreviation M for 1,000 cubic feet. The rates of the Community Company were $1.25 per month for the first M; 60 cents per M for the next 9 M; and 55 cents per M for all over 10 M—expressly designated in its franchise as maximum rates. The franchise rates of the fuel company, which were not expressed as maxima, were 50 cents per M, with a minimum monthly rate of $1.50. There were two other smaller concerns operating in certain districts of the city that had franchise flat rates of $2 per month. Shortly after the fuel company acquired its property, it began extending its mains, paralleling those of the Community Company in the most remunerative domestic districts, and began soliciting the Community Company's patrons at its franchise rates, which as will be noted were lower than those of the Community Company. When this suit was brought the fuel company was serving about 1,000 domestic consumers. During the same period (1927–1929) domestic patrons of the Community Company had dwindled to approximately 2,000. In the meantime the city had passed an ordinance reducing the rates of the Community Company to $1.25 for the first 2 M; 65 cents for the next 4 M; and 50 cents per M for all above 5 M. The Community Company appealed from this ordinance to the railroad commission, and, pending the appeal, obtained a temporary injunction suspending the ordinance upon the ground that the rates were unreasonable. The controversy was compromised and a new ordinance passed fixing the Community Company's maximum rates at $1.25 for the first M; 65 cents per M for the next 4 M; and 55 cents per M for all above 5 M. The fuel company for a short period reduced its rates from 50 cents to 40 cents per M, with a $1.50 minimum per month, but raised them again to the former scale. August 16, 1929, the Community Company advertised and put into effect a rate of 35 cents per M, with a $1.05 minimum monthly rate. The fuel company thereupon brought this suit with the noted result.

The grounds urged by the fuel company in support of the trial court's judgment may be briefly summarized:

1. The franchise rates of the Community Company, although expressed as maxima

were the only rates that could be charged by that company until modified by the city, since the city in fixing such rates was exercising its governmental function under R. S. art. 1119.

2. The 35-cent rate of the Community Company was below production cost, and for the sole purpose of stifling competition, running its competitor, the fuel company, out of business, and thereafter raising the rates to a remunerative basis; and was therefore unfair and illegal competition.

3. There was an illegal combination and conspiracy between the Lone Star Company and the Community Company to stifle competition and in restraint of trade, in violation of the anti-trust laws of the state.

The contentions of appellant, on the other hand, are:

1. The franchise rates governing it were as expressly stated only maxima, and it had the right to fix any lower rate it chose.

2. Article 1119 cannot properly be construed as authorizing a city to fix only maximum rates.

3. It was acting within its legal rights in reducing its rates to any figure below the maxima provided in its franchise, regardless of the effect upon the business of the fuel company.

4. Its action in fixing the 35-cent rate was to serve a legitimate purpose of its own, that is, to meet the competition of the fuel company, to preserve its business and plant, and therefore could not be brought in question, even if it were shown that it was also actuated by a desire to run its competitor out of business—an assertion which it denied.

Other contentions urged by appellant need not be noted, as they are not material under the view we take of the case.

■ There is no merit in appellant's contention that article 1119 authorizes a city to fix only maximum rates, with no power to prevent rate competition below that figure. The language of the article is: "The city council of all cities and towns in the state of Texas of over 2,000 inhabitants, shall have the power to regulate, by ordinance, the rates and compensation to be charged by water, gas, light, and sewer companies, corporations, or persons, using streets or public grounds of said city or town, and engaged in furnishing water, gas, light, or sewer service to the public." The word "regulate" cannot be construed as limiting the power granted to maximum rates. The power of the Legislature to regulate rates of public service utilities and the incident power of delegating such power to other governmental agencies is too well settled in our jurisprudence to require citation of authority. Wherever the question has arisen, this power has been construed as extending, not only to the fixing of maximum, but also of absolute rates. The Texas railroad commission is a notable example, not only in its constitutionally derived power with reference to railroads, but in its statutory power regarding other utilities, including those here in question. For a full discussion of the subject as applied to municipal corporations, see Incorporated Town of Mapleton v. Iowa Public Service Co. (Iowa) 223 N. W. 476, 68 A. L. R. 993.

■ There is an intimation in appellant's brief that such a power could not be constitutionally conferred. Just what constitutional right of appellant would be invaded by fixing its rates we are unable to see. In the case of City of Denison v. Gas Co., 117 Tex. 291, 3 S.W.(2d) 794, the Supreme Court held the provisions of articles 6050 to 6066, inclusive, which confer upon the railroad commission the right to regulate gas utilities, including the fixing of rates, in the first instance where they operate outside of cities, and upon appeal where they operate within cities, immune from constitutional attack. Article 1119 was construed in Uvalde v. Electric Co. (Tex. Com. App.) 250 S. W. 140, 141, and, while the question of its constitutionality was not discussed, it was involved in the decision of the case. The power of the Legislature to delegate to municipalities this authority may now be regarded as elementary.

In the Uvalde Case it was held that a city could not by contract barter away its governmental function of rate making; and, further, that the authority vested in cities under article 1119 was not merely permissive, to be exercised or not as the city might choose, but was imposed as a duty which the city was legally obligated to perform. To quote from the opinion: "This class of functions the city must perform. The city has no option. They are not to be exercised or ignored by the municipality at discretion. * * * Such functions are legal duties imposed by the state upon its creature. These duties the municipality may not omit with impunity, but must perform at its peril."

■ We do not regard the action of the city in granting the several franchises and amendments thereto as an exercise of its rate-making powers under article 1119. It will be observed that the rates authorized for the Community Company were only maxima, and those authorized by the fuel company, while not designated maxima, were lower than those of the Community Company for the same service to the same patrons in the same portions of the city. Whether the rates of the fuel company were fixed or merely maxima is not necessary to decide. The fuel company, itself, seems to have treated them only as maxima, since at one time it lowered

them without any authorization from the city. The city could not make rates for one corporation which were higher or lower than the rates made for another corporation for the same services to the same patrons in the same territory that would be legally binding as fixed rates. This the city does not appear to have attempted to do. All that it did, as we interpret the several franchise ordinances, was to fix maxima for each corporation, leaving them free to compete in the matter of rates within the maxima. It follows from what we have said that the injunction which prohibited the Community Company from making rates lower than those fixed in its franchise as maxima, while the fuel company was operating under lower rates in the same territory, was improperly granted.

In the view we take of the case, we find it unnecessary to pass upon the issues raised by appellee in its pleadings and brief with reference to the purpose of appellant in promulgating the 35-cent rate, and whether such rate was unreasonable. The relief sought and obtained in the trial court was to enjoin any rates below the maxima fixed in the Community Company's franchise.

It is urged by appellee that the trial court's judgment was tantamount to a finding in support of its allegations that the 35-cent rate was unjust and was inaugurated for the purpose of putting it out of business. The judgment did not specifically enjoin the 35-cent rate, but enjoined any rate below the Community Company's maxima. In legal effect it was mandatory, compelling appellant to maintain its franchise rates as fixed and not as maxima. The judgment is therefore necessarily based upon the proposition that, under the Community Company's franchise and article 1119, it could not make rates below the maxima without further authority from the city.

Rate making is a legislative, not a judicial, function [Missouri-Kansas & T. R. Co. of Texas v. R. R. Comm. (Tex. Civ. App.) 3 S.W.(2d) 489, affirmed (Tex. Com. App.) 13 S.W.(2d) 679]; and the rate-making power here involved is vested exclusively in the city of Brownwood, with the right of appeal to and trial de novo by the railroad commission, and a further limited right of review by the district courts of Travis county (R. S. arts. 1119, 6058 and 6059). The controversy between the two competing corporations is one which addresses itself in the first instance to the city of Brownwood, and not to the courts. Under the holding in the Uvalde Case the city is not only vested with the power, but is charged with the duty of fixing just and reasonable rates, both in the interest of the contending utilities and in that of the consumers. As was

said in Economic Gas Co. v. Los Angeles, 168 Cal. 448, 143 P. 717, 718, Ann. Cas. 1916A, 931: "It is contended that the city's police power extends only to the protection of the consumer. But 'regulation' involves more than that. It includes the power to prevent ruinous competition among the producers as well as unjust charges to the consumers."

The only powers which the courts could exercise in the premises would be to protect the rights of the parties pending final determination in the proper tribunal. That is not the relief sought in this case. So far as the record shows, appellee has made no application to the city to fix a rate just and reasonable to all concerned, and applicable alike to both corporations. For the reasons above stated, the relief sought and obtained is, we think, beyond the power of the courts to award.

The trial court's judgment is reversed, and the cause dismissed.

Reversed, and cause dismissed.