## TEXAS NATURAL GAS UTILITIES v. CITY OF EL CAMPO et al.

### No. 11006.

Court of Civil Appeals of Texas. Galveston.

Nov. 23, 1939.

Rehearing Denied Jan. 4, 1940.

S. C. Cappel, Jr., of El Campo, and Williams, Lee, Sears & Kennerly, of Houston (Irl F. Kennerly, of Houston, of counsel), for appellant.

Donald M. Duson, of El Campo, for appellees.

CODY, Justice.

This is an appeal from the refusal to appellant of a temporary injunction against the enforcement of an ordinance of the City of El Campo, prescribing maximum gas rates.

For more than ten years appellant has been selling natural gas, under a franchise from appellee, within appellee's corporate limits. On August 7, 1939, appellee by ordinance fixed the rates to be effective after September 1, 1939, which were materially less than those in effect. On August 29, 1939, appellant procured a temporary restraining-order upon sworn allegations that the rates fixed by the ordinance were confiscatory, etc. A temporary injunction was refused on September 11, after a hearing. The allegations of appellant's petition are to the effect: 1. That the complained-of rates were fixed without giving appellant a hearing. 2. That the members of the council were incapable of considering and determining impartially what would constitute legal rates for the city "in the spirit of the just judge". That the complained-of rates were confiscatory.

Assuming, for present purposes and because of the form in which this ap-

peal reaches us, the truth of appellant's allegations, we do not believe it was error to refuse the temporary injunction. If, as appellee contends, the Legislature has provided an adequate legal remedy against the adoption by the city council even of confiscatory rates, relief by injunction is not available. Rogers v. Daniel Oil & Royalty Co., 130 Tex. 386, 110 S.W.2d 891. Certainly the manifest purpose of Arts. 6058 and 6059 is to supply a remedy against the abuse, or erroneous use, of the rate-making power by city councils. Article 6058 reads: "When a city government has ordered any existing rate reduced, the gas utility affected by such order may appeal to the Commission by filing with it on such terms and conditions as the Commission may direct, a petition and bond to review the decision, regulation, ordinance, or order of the city, town or municipality. Up-on such appeal being taken the Commission shall set a hearing and may make such order or decision in regard to the matter involved therein as it may deem just and reasonable. The Commission shall hear such appeal de novo. Whenever any local distributing company or concern, whose rates have been fixed by any municipal government, desires a change of any of its rates, rentals or charges, it shall make its application to the municipal government where such utility is located and such municipal government shall determine said application within sixty days after presentation unless the determination thereof may be longer deferred by agreement. If the municipal government should reject such application or fail or refuse to act on it within said sixty days, then the utility may appeal to the Commission as herein provided. But said Commission shall determine the matters involved in any such appeal within sixty days after the filing by such utility of such appeal with said Commission or such further time as such utility shall in writing agree to, but the rates fixed by such municipal government shall remain in full force and effect until ordered changed by the Commission."

Article 6059 reads: "If any gas utility or other party at interest be dissatisfied with the decision of any rate, classification, rule, charge, order, act or regulation adopted by the Commission, such dissatisfied utility or party may file a petition setting forth the particular cause of objection thereto in a court of competent jurisdiction in Travis County against the Commis-

sion as defendant. Said action shall have precedence over all other causes on the docket of a different nature and shall be tried and determined as other civil causes in said court. Either party to said action may have the right of appeal; and said appeal shall be at once returnable to the appellate court, and said action so appealed shall have precedence in said appellate court of all causes of a different character therein pending. If the court be in session at the time such right of action accrues, the suit may be filed during such term and stand ready for trial after ten days' notice. In all trials under this article the burden of proof shall rest upon the plaintiff, who must show by clear and satisfactory evidence that the rates, regulations, orders, classifications, acts or charges complained of are unreasonable and unjust to it or them."

It was said by the Austin Court in Community Natural Gas Co. v. Natural Gas & Fuel Co., 34 S.W.2d 900, 903: "Rate making is a legislative, not a judicial, function * * * ; and the rate-making power here involved is vested exclusively in the city of Brownwood, with the right of appeal to and trial de novo by the railroad commission, and a further limited right of review by the district courts of Travis county (R.S. arts. 1119, 6058 and 6059)."

In the case of Texas Gas Utilities Company v. City of Uvalde, 77 S.W.2d 750, 753, decided by the San Antonio Court of Civil Appeals in 1934, the City of Uvalde brought suit in the District Court of Uvalde County to enjoin the receiver of the Texas Gas Utilities Company from charging gas rates fixed by an order of the District Court of Val Verde County and in excess of rates fixed by an ordinance of the City of Uvalde. The District Court granted the injunction, but the Court of Civil Appeals reversed the cause and dissolved the injunction, on the grounds that the District Court of Uvalde had no authority to issue the injunction. In discussing the order of the District Court of Val Verde County fixing the higher rates, which was held to be void for the want of jurisdiction, the court said: "However, when the city council refused to raise the rates, the receiver, if not satisfied, could only appeal to the State Railroad Commission, as provided for in article 6058, R.S.1925. Until this legislative remedy provided for by law had been exhausted, no court of this state has any jurisdiction of the matter, and,

after the legislative remedy is exhausted, article 6059 gives only the courts of Travis county jurisdiction of the matter."

In the same opinion, in outlining the procedure which should have been followed, the court uses this language: "In this state all that need be done is to follow the statutes. Article 1119 gives to cities of more than 2,000 inhabitants the legislative power of fixing gas rates to be paid by consumers. Article 6058 provides for an appeal to the Railroad Commission for a trial de novo, and this is made expressly to apply to receivers of gas companies by article 6050. When this has been done, the legislative remedy will have been exhausted and the judicial stage reached. Article 6059 limits the judicial remedy to the courts of Travis county. We consider these statutes valid, and see no reason why they should not be followed."

It is appellant's contention, however, that the City council in fixing the complained-of rates went outside of the statutory limitations which conferred the rate-making power, and has acted without any authority of law, and that such action is not merely erroneous, but absolutely null and void, and may be questioned in a court-action without resorting to, or exhausting administrative remedies. State Line Consol. School Dist. No. 6, etc., v. Farwell Independent School Dist. et al., Tex.Com.App., 1932, 48 S.W.2d 616, 617. The principle which appellant seeks to invoke, however, does not apply. The city council, in fixing the complained-of rates, merely exercised rate-making power, and rate-making power was conferred on it by Statute. Art. 1119, as amended in 1937, Vernon's Ann.Civ.St. art. 1119. What was said by the Commission in Producers' Refining Co. v. Missouri K. & T. R. Co., Tex.Com.App., 13 S.W.2d 679, of an order of the Railroad Commission which was attacked as void, applies here: "When it [The R.R.Comm.] establishes a rate, it necessarily finds that such rate is neither unreasonable nor discriminatory. The order, therefore, is not in violation of, but in exact keeping with, the requirements of the Constitution and statute. To hold as we are urged to hold * * * would be to deny that any tribunal can establish a lawful rate in any given instance as against a subsequent claim that such rate is in violation of the requirements of reason and fairness. Such rules would bring about chaotic results and leave rates to be determined at any time their validity might be called in question, in any court having jurisdiction of the amount involved in the particular controversy. * * *" The claim of appellant that the council has exercised rate-making powers so as to fix rates that are confiscatory of appellant's property is not a claim that the council has undertaken to exercise powers not conferred on it by statute, but is a claim that it has exercised its rate-making powers in such an extremely unreasonable and abusive manner as to amount to confiscation. The difference between a rate that is unreasonably low, and one that is so extremely unreasonably low, as to be confiscatory is one of degree, and not of kind. It was to meet just such a claim, and just such a situation that Art. 6058 was enacted, providing for appeals to the Railroad Commission.

In the case of City of El Paso v. Texas Cities Gas Company, 5 Cir., 100 F.2d 501, 503, the City of El Paso passed a rate-ordinance fixing gas utility rates to be charged consumers in that city. Such action was taken by the City Council without giving the gas utility serving such town an opportunity to be heard, and without even giving such utility a reasonable time in which to furnish information concerning their rates which had been demanded by the City Council. The gas utility brought suit in a Federal District Court to enjoin the enforcement of this ordinance, contending that such ordinance was invalid for want of procedural due process, and because it would operate to confiscate their property in violation of constitutional principles. A full hearing was had before the Federal District Court, and the injunction requested was granted. The Circuit Court of Appeals for the Fifth Circuit reversed the District Court and ordered the dissolution of the injunction, allowing a reasonable time for the utility to enter an appeal to the Railroad Commission of Texas. The rate-ordinance in the case referred to was held to be unlawful both by the District Court and the Circuit Court, but nevertheless, the Circuit Court held that the District Court should have refrained from exercising the power of injunction for two reasons: First, as a matter of comity, the Federal Court should not interfere where State-action is involved, and the action thus far taken was not final, but might be fully reviewed administratively and a re-

dress afforded by the State; and second, that administrative process, whether State or Federal, which could remedy the thing complained of, ought to be exhausted before applying to a court of equity. Referring to these two principles the court said in its opinion: "Under both principles the Court here should have refrained from exercising the power of injunction. An appeal to the Railroad Commission would have been equally as prompt as final action by the Court. Substantially the same sort of bond would have been required by the Commission to supersede the ordinance as was required by the Court to restrain it pending hearing; and the Company was amply able to give it. The want of opportunity to present its case would be fully redressed by a de novo hearing before the Commission, and we cannot suppose that that experienced body would reimpose a confiscatory rather than a reasonable rate. We regard the State of Texas rather than the municipality of El Paso as speaking in the legislative act of rate making, although performed by the City Council, and the rate ordinance is thus State action within the Fourteenth Amendment. * * * But the State has not finished speaking till its Railroad Commission has spoken. The District Court ought to wait till that time before undertaking to interfere."

Appellant relies for reversal of the trial court's action particularly on Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 775, 999, 82 L.Ed. 1129, where the court said, referring to the action of Administrative Agencies *exercising broad control* over activities which in their details cannot be dealt with directly by the legislature: "The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles that the Legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasijudicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing,' essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an 'inexorable safeguard.' St.

Joseph Stock Yards Co. v. United States, 298 U.S. 38, 73, 56 S.Ct. 720, 735, 80 L. Ed. 1033; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 304, 305, 57 S.Ct. 724, 730, 81 L.Ed. 1093; Railroad Commission of California v. Pacific Gas & Electric Co., 302 U.S. 388, 393, 58 S.Ct. 334, 338, 82 L.Ed. 319; * * *".

■ What has just been quoted is highly appropriate to the administrative agencies which Congress sets up to exercise broad control over activities which in their details cannot be dealt with directly by the Legislature, for the findings of such agencies are generally made conclusive on the facts, and in the instance dealt with in the Morgan case Congress had provided that the order of the Secretary of Agriculture should be final and conclusive unless appealed to the Circuit Court of Appeals within a certain time. But the fixing of the rates by a city council is, so far as the public utility is concerned, merely tentative. Such action initiates the process by which the public utility may go before the Railroad Commission. We do not believe that it is necessary to furnish appellant with two such bodies as the Railroad Commission and require that both such bodies conform to such procedure as that followed by the Railroad Commission, in order to safeguard the rights of appellant. No one can complain of any want of "due process" in the procedure before the Railroad Commission, and the right to resort to the Railroad Commission, and thereby enjoy its procedure, is given appellant by statute.

Appellant complains that Arts. 1119, 6058, 6059, single out gas utilities and subject them to a process of rate-regulation not applied to power, light, telephone, water and sewerage utilities, and therefore deny gas utilities the equal protection of the laws, in violation of Section 1 of the Fourteenth Amendment, U.S.C.A.Const.

■ We are unable to see that the difference in method provided for fixing rates for gas utilities from that provided for fixing rates for other utilities is a denial to gas utilities of the equal protection of the laws. In presenting this point of appellant, we will employ appellant's own picturesque language: "In baseball parlance, it is the difference between going to bat with one strike against you, and going to bat with two strikes against you. All aggrieved utilities in Texas, except

gas utilities, are permitted to go before a judge and jury to seek relief from adverse determination by a *single* administrative agency (a city council). An aggrieved gas utility, when it finally reaches a judge and jury, is burdened with the imputation arising from having suffered an adverse decision by each of *two* administrative agencies, one local (city· Council) and the other state-wide (Railroad Commission) in jurisdiction. * * *." We confess that this objection seems to us to lie on the fanciful side, and for that reason it is somewhat difficult to answer. If we are to assume that judges and juries go into the trial of cases enchained by prejudices, we would be authorized to believe that, in free America, there would be at least as many prejudiced against, as in favor of, the findings of governmental bureaus and agencies. It has never been the theory, in instances where de novo trials are provided for, that the result of the first trial will merit or receive any consideration in the de novo trial. In instances where gas utilities may hereafter appeal rates to the Railroad Commission, should it occur that they are dissatisfied with the action of the Railroad Commission, and attack rates fixed by it, it seems to us that it would be as unlikely as it would be unlawful for either judge or jury to consider what the city council had done. But this is purely unprofitable speculation. It was evidently the belief of the legislature that the provision for action by the Railroad Commission would safeguard the interest of gas consumers, and the rights of gas utilities, a belief which it is very easy to concur in.

Appellant should have pursued its legal remedy, and the learned trial court correctly refused the temporary injunction.

Affirmed.

## On Motion for Rehearing

■ The Legislature has provided the gas utilities with an adequate remedy against council-made rates by affording such utilities an appeal to the rate-making power, and the procedure of, the Railroad Commission. Indeed, the legal history of the various states in general, and of Texas in particular, discloses the fact that the need for creation of a commission to make rates, etc., largely grew out of the inadequacy of courts to deal with legislature-made railroad rates. They indeed had the power and duty to strike down rates which were made ·operative retroactively, or which were so extremely unreasonable and unjust as to ·be confiscatory, but as the courts have no legislative power, they could not fix rates which were just and reasonable, in lieu of those adjudged void.

■■ The mere fact that a rate may be retroactive or confiscatory or otherwise invalid does not necessarily confer upon interested parties the right to treat it as void for every purpose. Indeed, Art. 6452, R.S.1925, expressly makes the rates, etc., prescribed by the commission, conclusive and binding in actions between carriers and shippers until finally found otherwise in a direct action brought for the purpose in the manner prescribed by R.S. Articles 6453 and 6454. Indeed, the effect of these articles is to deny railroads and shippers the right to question the validity of commission-made rates in suits inter sese, because otherwise every case would be bogged down by the complications of rate-making, and thus redress be practically denied. Railroad Comm. v. Weld, 95 Tex. 278, 66 S.W. 1096. If, therefore, it was competent for the Legislature to make commission-made rates binding as between carriers and shippers, because it also provided an adequate remedy to the parties by giving them a direct action against the commission to test the validity or fairness of such rates, no reason can be perceived why council-made rates shall not be made binding on gas utilities, unless and until such utilities appeal to the commission. At any rate, if the Legislature has provided an adequate legal remedy whereby gas utilities can secure redress for rates of which it is claimed that they are imposed retroactively, or that they are confiscatory or are otherwise invalid, the gas utilities have no right to invoke injunctive relief which courts of equity will give only where there is no adequate legal remedy. The legal remedy afforded by the Legislature against council-made rates of an appeal to the R. R. Commission, and a trial de novo before that body to establish rates that will be fair and just, is no more burdensome than is an application for a writ of injunction. From the standpoint of public welfare, it is much more desirable that fair and just rates be established by a competent rate-making body, than that rates be struck down as void ab initio by an injunction, so as to leave the old. rates,

in effect, rates which the city council in any particular instance must be taken to have deemed oppressive.

Appellant's motion for rehearing refused.