CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY ET AL. *v.* PUBLIC UTILITIES COMMISSION OF THE STATE OF IDAHO.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF IDAHO.

No. 242. Argued March 17, 1927.—Decided May 16, 1927.

1. A State cannot require a railroad to accept confiscatory rates on saw logs hauled intrastate to the mill upon the ground that the revenue from the log haul combined with that received from the interstate haul of the manufactured products of the logs, is adequate. P. 350.

2. Where rates found by a regulatory body to be compensatory are attacked as being confiscatory, the courts may inquire into the method by which its conclusion was reached. P. 351.

3. Findings of the Interstate Commerce Commission that rates on certain commodities in a district embracing several States are unreasonable, and not expressly relating to intrastate rates, are to be construed as applying to interstate rates exclusively. P. 351.

4. Orders of the Director General of Railroads advancing interstate and intrastate rates and of the Interstate Commerce Commission authorizing a further advance, *held* not to affect the rights of carriers or the duties of a state public utilities commission in respect of subsequent rate reductions. P. 352.

5. The fact that the Interstate Commerce Commission found an interstate rate too high and authorized reduction is no basis for an order of a state commission reducing the intrastate rate on the same commodity, and an order requiring such reduction, on that basis alone, without a hearing or consideration of evidence offered to prove the inadequacy of the rate so fixed, is arbitrary and a denial of due process. P. 352.

41 Idaho 181, reversed.

CERTIORARI (269 U. S. 550) to a judgment of the Supreme Court of Idaho, which affirmed, on appeal of the above named and three other railroads, an order of the respondent commission reducing rates on transportation of saw-logs intrastate in Idaho.

*Messrs. F. M. Dudley* and *Thomas Balmer*, with whom *Messrs. L. B. DaPonte, O. W. Dynes, F. G. Dorety, D. F. Lyons*, and *Alex M. Winston* were on the brief, for petitioners.

*Mr. Charles E. Elmquist*, with whom *Mr. A. H. Connor*, Attorney General of Idaho, was on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

August 20, 1923, respondent made an order reducing the Idaho intrastate rates for the transportation of saw logs by railroad. Petitioners appealed to the Supreme

Court of the State, and there the order was affirmed. 41 Idaho 181.

The Director General of Railroads by Order No. 28, effective June 25, 1918, advanced all rates. An addition of 25 per cent. was made to the interstate and intrastate rates on saw logs. In 1920 the Interstate Commerce Commission authorized the carriers further to increase rates. *Ex parte 74,* 58 I. C. C. 220, 246. The addition to freight rates in the mountain-Pacific group that includes Idaho was 25 per cent. The respondent authorized additions of 25 per cent. to rates on intrastate freight including saw logs. In 1922 the Interstate Commerce Commission found the freight rates unreasonable, on and after July 1, 1922, to the extent that the rates in effect immediately before the increases authorized in *Ex parte 74* were exceeded by more than specified percentages; and that stated for the mountain-Pacific group was 12½ per cent. The carriers were authorized to reduce rates in accordance with these findings. *Reduced Rates, 1922,* 68 I. C. C. 676, 734. As applied to interstate traffic in saw logs, such reduction was ten per cent. Respondent authorized corresponding reductions on Idaho intrastate freight. While the reductions were generally made by the railroads throughout the country and in Idaho, the petitioners did not make any reduction of interstate or intrastate rates on logs. And no reduction of the interstate rate has been ordered by the Interstate Commerce Commission.

September 28, 1922, the respondent ordered petitioners, by answer filed within a specified time, to show "compliance or non-compliance in the matter of reduction of rates on saw logs and other forest products intrastate within the State of Idaho in accordance with the findings of the Interstate Commerce Commission," and that they show cause why such reduction should not be made. The

Chicago, Milwaukee and Saint Paul, the Great Northern and the Northern Pacific answered. Each stated that it had put in effect the reduced rates on intrastate freight except saw logs, and that it had not reduced interstate or intrastate rates on saw logs because the existing rates were unreasonably low and confiscatory and should be increased. At the hearing the carriers offered evidence that the existing rates were unreasonably low and confiscatory. The Western Pine Manufacturers Association intervened to support the proposed reduction. It has about 59 members who manufacture annually about one and a half billion feet of lumber in the Inland Empire—eastern Washington and Oregon, Idaho and western Montana. The logs hauled intrastate in Idaho constitute a very small part of those sawed by the members of the association. The Chicago, Milwaukee and Saint Paul analyzed its Idaho intrastate log traffic in the first ten days of each month in 1921. It hauled 3,876 carloads an average distance of 36.2 miles for $68,174.17. It introduced evidence to show that taxes, operating expenses, rentals and interest on investment chargeable to that traffic amounted to $94,658.13, and that taxes and operating expenses alone amounted to $62,622.88. The Great Northern in 1921 hauled 2,620 carloads an average distance of 26.2 miles for $46,130.87, and offered evidence that operating expenses chargeable to that traffic exceeded revenue. The Northern Pacific in the year ending October 1, 1922, hauled 240 carloads. There was no evidence indicating revenue received from or operating expenses chargeable to that traffic. But the company called as a witness its special traffic representative, a man of long experience in its operating and traffic departments, who testified that in his opinion the rates were confiscatory. The Spokane and International in 1921 hauled 1,250 carloads for about $22,800. The witnesses

called by petitioners made comparisons of rates and. testified that those on logs were relatively low. The Western Pine Manufacturers Association, by cross examination of carrier witnesses and by the testimony of its traffic manager, showed that in the Northwest the Northern Pacific originally established the rates on logs, and made them very low in order to move the logs to the mills for the manufacture of lumber to be shipped long distances to eastern markets; that carriers later building into that territory pursued the same policy and that the rates in Idaho were so made; that these rates remained until federal control; that some of the tariffs state that the rates are established to furnish logs to manufacturers who are to forward equivalent products over the carrier's railroad, and that, if the condition is not complied with, higher rates will be charged. It was not shown to what extent, if any, such higher rates were collected. The traffic manager of the association testified that practically all of the lumber moved long distances in interstate commerce; that freight on logs is a part of the manufacturer's operating cost while freight on lumber is borne by the consumer. By way of illustration, it was estimated that the logs hauled intrastate in Idaho by the Chicago, Milwaukee and Saint Paul in 1921 would produce lumber sufficient to yield freight revenue of $1,279,-080 and that those hauled by the Great Northern would make lumber enough to produce $288,123.

The respondent found the existing rates on saw logs unreasonable and discriminatory and ordered the carriers to file tariffs " in compliance with the reductions in the findings of the Interstate Commerce Commission . . . applicable to shipments on saw logs intrastate. . . ." Respondent's opinion gives the following reasons. The existing relation between rates on logs and those on other commodities should be maintained. Hauling logs to the

mill is incident to the lumber traffic, which includes the transportation of the finished products from the mill. A branch line carrying logs may not of itself yield sufficient revenue to pay operating expenses, but, when it receives credits to which it is entitled as part of the system, it is generally a good revenue producer. As all freight rates had been twice advanced, it was just and reasonable that the reduction authorized should apply to all commodities. The evidence submitted " does not justify the contention of the carriers that the rates on saw logs are too low when compared to rates on other commodities, as the transportation of saw logs from the forest to the mill furnishes profitable business to the railroad system." The hearing was not a rate hearing, but was held for the purpose of giving the carriers an opportunity to show why they had not reduced rates on logs " in accordance with the findings of the Interstate Commerce Commission." Respondent had theretofore, " without hearing, adopted the findings of the Interstate Commerce Commission and made orders authorizing and permitting rate increases where the findings of the Interstate Commerce Commission determined that such rate increases were justifiable and reasonable; " and " now when the Interstate Commerce Commission . . . determines that certain rates are unjustifiable and unreasonable, this commission sees no reason why it should change its method of procedure and proceed to a hearing on rates affecting intrastate shipments ". And it said: " This commission adopts the findings made by the Interstate Commerce Commission . . . and will order that tariffs be filed in accordance with said findings applicable to intrastate shipments on saw logs." '

Following the state practice the case was heard in the Supreme Court on the record made before the respondent. The court held that the respondent was authorized to reduce the rates in question without finding them un-

just or unreasonable. And, as to petitioner's insistence that the rates prescribed by the order are confiscatory, it said (p. 197):

" If it were conceded,  . . .  that the evidence shows that the existing rates are already insufficient to pay such returns upon the capital  . .  .  as the law prescribes to be a reasonable return upon the capital invested, it would not necessarily follow that the rates would be confiscatory for the reason that the evidence also tends to show that the rates paid the carriers for the hauling of logs from the forest to the mill is only one step in the process of reducing the lumber in the forest tree to the finished product and delivering the same to the ultimate consumer. . . . The revenue derived from the shipment of logs . . . is only an incident to the traffic, and should not be considered as an independent rate, but the rate must be considered in connection with the entire revenue earned " by transporting the logs and the lumber.

The evidence introduced by the carriers was sufficient to warrant, if not to require, a finding that, as to the lines of all the petitioners, the intrastate log rates in question are very low in comparison with the rates on other commodities, and that, as to the Chicago, Milwaukee and Saint Paul and the Great Northern, they are confiscatory. But, as appears from their opinions, the respondent and the court refused to consider and give weight to that evidence because, as they held, the intrastate log rates were not to be dealt with separately but were to be considered in connection with the interstate lumber rates, and because the carriers made no showing as to the gains or losses resulting from the interstate transportation. That cannot be sustained. The carriers cannot maintain interstate lumber rates higher than otherwise justified by showing that they suffer loss or have inadequate returns from the intrastate transportation of logs. The State has no power to require petitioners to haul the logs at a

loss or without compensation that is reasonable and just, even if they receive adequate revenues from the intrastate log haul and the interstate lumber haul taken together. *Northern Pacific Ry.* v. *North Dakota,* 236 U. S. 585, 595-596; *Norfolk & Western Ry.* v. *Conley,* 236 U. S. 605, 609; *Brooks-Scanlon Co.* v. *Railroad Commission,* 251 U. S. 396, 399; *Northern Pacific* v. *Dept. Public Works,* 268 U. S. 39, 43; *Banton* v. *Belt Line Ry.,* 268 U. S. 413, 421.

This case is in principle the same as *Northern Pacific* v. *Dept. Public Works, supra.* That case involved the validity of an order of the Washington Department of Public Works reducing the intrastate log rates. The carriers assailed them as confiscatory, and introduced persuasive evidence that the rates existing before the reduction were not sufficient to pay operating expenses and taxes. The Department, without attacking the proof or attempting to show by reasonably specific and direct evidence what the actual operating costs were, lowered the rates on the basis of a composite figure representing the weighted average operating cost per thousand gross ton miles on all revenue freight carried on the railroad systems. We applied the rule (p. 44) that, where rates found by a regulatory body to be compensatory are attacked as being confiscatory, the courts may inquire into the method by which its conclusion was reached. Cf. *United States* v. *Abilene & Southern Ry.,* 265 U. S. 274, 288; *The Chicago Junction Case,* 264 U. S. 258, 263; *Interstate Commerce Commission* v. *Union Pacific R. R.,* 222 U. S. 541, 547. And we held that the method pursued by the Department was fundamentally erroneous and constituted a denial of due process of law.

As the findings of the Interstate Commerce Commission in 1922 do not expressly relate to intrastate rates, they are to be deemed to apply exclusively to interstate commerce. Moreover, it appears from its report that

the Commission did not consider, or intend to make any findings as to, the Idaho intrastate rates on logs. The respondent misinterpreted the effect of the rate advances made in 1918 and 1920. The orders making them did not affect the rights of the carriers or the duties of respondent in respect of subsequent rate reductions. The findings of the Interstate Commerce Commission permitting reductions of interstate rates did not justify respondent in declining to proceed to a hearing or in adopting such findings as the basis of its order. And, as no reduction of the corresponding interstate log rates has been made by petitioners or ordered by the Interstate Commerce Commission, the respondent's order destroys the relation between the intrastate and the interstate log rates in the same territory. It is impossible to sustain the refusal to consider the evidence introduced by the carriers to show that the rates in question are too low and confiscatory. The commission and the court erred in holding that the reasonableness or validity of the intrastate log rates depends on the amounts received by petitioners for the interstate transportation of lumber. It is clear that the methods by which respondent reached its conclusion were arbitrary and constitute a denial of due process of law.

, *Judgment reversed.*