## OKLAHOMA GAS & ELECTRIC CO. v. CORPORATION COMMISSION OF OKLAHOMA et al.

## SOUTHWESTERN LIGHT & POWER CO. v. SAME.

### Nos. 1396, 1397.

District Court, W. D. Oklahoma.

Nov. 2, 1932.

Rainey, Flynn, Green & Anderson, of Oklahoma City, Okl., for plaintiff Oklahoma Gas & Electric Co.

S. I. McElhoes, of Oklahoma City, Okl., for plaintiff Southwestern Light & Power Co.

Freeling & Box, of Oklahoma City, Okl., J. Berry King, Atty. Gen., and A. Holmes Baldridge, Asst. Atty. Gen., for defendants.

Before COTTERAL and McDERMOTT, Circuit Judges, and VAUGHT, District Judge.

PER CURIAM.

The plaintiffs seek permanently to enjoin an order made by the corporation commission of the state of Oklahoma, prescribing and fixing a rate of 2.75 cents per kilowatt hour for electricity sold for industrial consumption at all cotton gins served by the plaintiffs in the various towns and communities within the state of Oklahoma, effective until the further order of the commission.

Answers have been filed and the causes are at issue. Both plaintiffs have filed motions for judgment on the pleadings, on the ground that the order attacked is void on its face; that it discloses that it pursued a method which is fundamentally erroneous, and in excess of the power granted to it by the Legislature. The motions for judgment have been argued and submitted, and the causes now come on for decision.

A preliminary question of jurisdiction is presented. The bills of complaint allege, and the answers admit, that the plaintiffs filed with the corporation commission an application for an appeal to the Supreme Court of Oklahoma, and that the order be superseded pending such appeal. The commission allowed the appeal but denied the supersedeas. Thereupon, an application for a supersedeas was made to the Supreme Court of Oklahoma, accompanied by an offer to give bond in such amount as the court might deem proper, conditioned that the plaintiff would remit to their customers, in the event the order should be finally sustained, the difference between the rate ordered in by the commission and the present rate. The Supreme Court of Oklahoma denied the application for a supersedeas. The result is, unless there is jurisdiction in this court in these cases, the plaintiffs will be actually subjected to the rates complained of. Under these circumstances this court has jurisdiction. Oklahoma Natural Gas Co. v. Russell, 261 U. S. 290, 43 S. Ct. 353, 67 L. Ed. 659.

In its order the corporation commission stated that the evidence presented to it dealt largely " * * * with the lower prices obtainable through the use of fuel oil, gas, coal, and other substitute fuels. It was clearly shown that the cost of electric energy in the operation of a cotton gin is very much in excess of the cost of gas, coal or oil, which might be used in the generation of power in the operation of such facilities. This was not disputed by the electric utilities. * * * "

The commission found that the electric energy costs the ginners more than if gas, coal, or oil was used for fuel; that the average cost per bale, by the use of other fuels, would be 56.2 cents per bale, while the cost of electricity is 89 cents per bale.

The commission further found that it would require a greater investment upon the part of ginners to operate with coal, gas, or oil than with electric power; that the cost of this excess investment was $3,000, which, at 6 per cent. interest, would earn $180 annually. The rate for electric power was therefore reduced to the approximate level of the power cost of other fuels. The commission found that the rates now charged for electric power are the same as those charged during the prosperous years of 1927, 1928, and 1929, and that the commission might take judicial notice of the fact that prices of all commodities are lower today than during those years. The commission further found: "That the comparison of the cost of fuel used in operation of cotton gin shows conclusively that the cost for electric energy is out of proportion to the cost of other fuel which may be used. This being true, after taking into consideration the difference in the cost of investment of facilities necessary to be used in the consumption of these comparative fuels."

The bills of complaint allege the value of the properties of the plaintiffs used and useful in furnishing electric energy for the operation of cotton gins; that the gross revenues from electricity sold for the operation of cotton gins under existing rates, less the operating expenses thereof, left 4.8 per cent. for depreciation and return; that the order of the commission reduced the rates to the point of confiscation.

The answers of the corporation commission allege that: " * * * If the rate were determined by ascertaining the value of the property used and useful in serving cotton gins, there could necessarily be only a single rate schedule with steps to care for volume, and to arrive at such a rate schedule it would be necessary to make a valuation of the properties of complainant in their entirety, within the State of Oklahoma; that it would be impossible to arrive at any fair basis of allocation for the purpose of determining what portion of the properties of complainant are devoted exclusively to serving electrical energy to cotton gins within the State of Oklahoma."

The answers then allege the average fuel cost per bale of cotton, of coal, gas, and oil has been materially reduced in the last year, but that there has been no material reduction in the fuel cost per bale for electricity. It then alleges: " * * * That ginners will not be able to use electrical energy unless the rates are materially reduced; that the ginners herein concerned have made investments in electrical equipment and, therefore, must use electrical energy for fuel; that competition is the only true guide in the determination of a proper industrial rate to be charged by an electrical utility for industrial consumers; that as respects industrial business, as long as the utility is earning more than the actual cost of the energy produced, it is earning a sufficient rate of return upon its investment; that in the determination of proper industrial rates, the rate cannot be based upon the value of the property, as is a domestic rate, because of the fact that as respects domestic rates there exists a virtual monopoly whereas, as respects industrial rates, there is competition and, therefore, the true industrial rate is that rate dictated by competition."

It will be observed that the commission made no finding as to the values of the properties of the plaintiffs used and useful in supplying electric energy to the cotton gins of Oklahoma; nor was any finding made of the expenses of supplying such energy, or of the revenues received therefrom. On the other hand, the commission affirmatively found the power cost of other fuels, applied a differential thereto growing out of the additional investment necessary in the use of other fuels, and reduced the electric rates to meet the costs of other fuels.

It was stated in argument, and is apparent from an examination of the order and answer, that the orders under attack are predicated upon two theories of rate making:

(a) That it is immaterial whether a rate to a certain class of customers pays a fair return upon properties devoted to their service, as long as there is no proof that the net revenues of the utility from all classes of customers are not compensatory.

(b) That the primary obligation of the plaintiffs is to serve domestic consumers; that industrial energy is a by-product, useful for the purpose of absorbing electric energy at times when the domestic consumption does not require it; that unless the industrial rates are lowered the cotton ginners will go to other fuels which will result in a loss of revenue to the utility. The order, however, makes no such findings, nor is there such an

allegation in the answers. The plaintiffs vigorously deny the fact. We take judicial notice of the fact that cotton ginning is a seasonal occupation, in that cotton gins operate but about three months a year.

This case is heard at the commencement of the ginning season; both parties urge an immediate decision of the issues. presented. From the order itself, the answer of the commission, and the statements of counsel, it is apparent that the validity of this order depends upon a single question: Does the corporation commission have the power to order the plaintiffs to furnish electricity for the same amount as the ginners would be compelled to pay for coal, without regard to the return afforded by such rates on the properties used and useful in such service?

The Commission, in its order, took judicial notice of the fact that prices to-day are lower than they were in the years 1927, 1928, and 1929, and that rates for electric energy have not been reduced. The amount of reduction in general prices is not found; nor is there a finding as to whether the income of the plaintiffs has suffered a similar reduction. But the order is not based on that finding. It is entirely clear that the order is predicated on a comparison with the cost of other fuels. After a study of the costs of such other fuels, the commission concludes its discussion of the comparative costs of electric energy with other fuels as follows:

"* * * Making further comparison of this cost with the actual average cost, shown by the evidence where electrical energy is used, of 89¢, results in a percentage of 16.9%, which it appears to the Commission might very well be used as a basis for the reduction of the rate now charged for electric current.

"The average rate now being charged for electric energy used by cotton gins is 3.25% per Kw-h and the application of 16.9% reduction will result in an average rate of 2.70¢ per Kw-h. We believe that a uniform rate of 2.75¢ for cotton gins served by respondents, Oklahoma Gas & Electric Company and Southwestern Light & Power Company is justified."

■ If the commission does not have the power to reduce rates of one fuel to meet the cost of another fuel, the order is invalid. If the principle upon which an order is based is erroneous, or beyond the power of the commission, the order cannot stand, and the case must go back to the commission for an order made upon a lawful basis. Chicago, M.

& St. P. R. Co. v. Public Utilities Comm., 274 U. S. 344, 47 S. Ct. 604, 71 L. Ed. 1085; Northern Pac. R. Co. v. Dept. of Public Works, 268 U. S. 39, 45 S. Ct. 412, 69 L. Ed. 836; St. Louis & O'Fallon R. Co. v. U. S., 279 U. S. 461, 465, 49 S. Ct. 384, 73 L. Ed. 798.

The power to compel a citizen to furnish one commodity for the same price that others can furnish substitutes is an extraordinary power. Most of us would use electricity for heating and cooking in our homes if the cost was no more than for coal. Railroads have voluntarily put in rates to compete with water competition, as gas companies have put in industrial rates to compete with coal. It is a different thing to compel, by force of law, a utility to furnish services at less than cost in order to meet such competition. We do not believe such power exists.

■ The general rule is that a utility cannot be compelled to carry on even a branch of its business at a loss. Brooks-Scanlon Co. v. Railroad Comm., 251 U. S. 396, 40 S. Ct. 183, 64 L. Ed. 323; Northern Pac. R. Co. v. North Dakota, 236 U. S. 585, 35 S. Ct. 429, 59 L. Ed. 735, L. R. A. 1917F, 1148, Ann. Cas. 1916A, 1; Norfolk & Western R. Co. v. Conley, 236 U. S. 605, 35 S. Ct. 437, 59 L. Ed. 745. In Chicago, Milwaukee & St. Paul Railway Company v. Public Utilities Commission, 274 U. S. 344, 47 S. Ct. 604, 606, 71 L. Ed. 1085, it appeared that the public service commission had made an order reducing the rates on the transportation of logs which the railroad company claimed was not compensatory. The public service commission answered that its entire business was profitable. The Supreme Court said: "The state has no power to require petitioners to haul the logs at a loss or without compensation that is reasonable and just, even if they receive adequate revenues from the intrastate log haul and the interstate lumber haul taken together."

In Alton & S. Railroad v. United States (D. C.) 49 F.(2d) 414, 417, a three-judge court dealt with the validity of a rate on specific commodities, and in that connection said, citing many cases in support thereof: "It is claimed, and is well settled by the decisions of the Supreme Court, that, where a railroad rate is under attack before the Interstate Commerce Commission or before the court, that rate must stand or fall in the test as to its reasonableness, upon the proposition that the rate under attack must itself furnish a reasonable and adequate return for the

service rendered, and that a reasonable and adequate return must pay the cost of that service, as distinguished from all other service, plus a reasonable profit thereon."

This general rule is subject to certain exceptions. One of them is that where a railroad company has contracted to furnish certain services to the public, it cannot repudiate that obligation while continuing to enjoy its franchise right. Broad River Power Co. v. South Carolina, 281 U. S. 537, 50 S. Ct. 401, 74 L. Ed. 1023; Id., 282 U. S. 187, 51 S. Ct. 94, 75 L. Ed. 287. It is also subject to the practical modification that a railroad may not demand a mathematical return on each mile or section of its lines. Puget Sound Traction, Light & Power Co. v. Reynolds, 244 U. S. 574, 37 S. Ct. 705, 61 L. Ed. 1325; St. Louis & S. F. R. Co. v. Gill, 156 U. S. 649, 665, 667, 15 S. Ct. 484, 491, 39 L. Ed. 567, 573. Nor is a rate, compensatory in itself, invalid because each item of expense entering into the service is not computed to a nicety. Atchison, T. & S. F. R. Co. v. U. S., 232 U. S. 199, 34 S. Ct. 291, 58 L. Ed. 568; Alton & S. R. R. v. U. S. (D. C.) 49 F.(2d) 414.

The cases at bar fall within the general rule, and not the exception. The supplying of power to cotton gins is a branch of the business of plaintiffs, and the rate for such service must be sufficient to afford a reasonable return on the properties devoted to that service. Bluefield Water Works & Imp. Co. v. Public Service Comm., 262 U. S. 679, 43 S. Ct. 675, 67 L. Ed. 1176; United Railways & Electric Co. v. West, 280 U. S. 234, 249, 50 S. Ct. 123, 74 L. Ed. 390.

The commission has made no findings upon the underlying question of the value of the properties devoted to this service, nor to the revenues and disbursements incident thereto. We cannot. As was said in Florida v. U. S., 282 U. S. 194, 215, 51 S. Ct. 119, 125, 75 L. Ed. 291: "In the absence of such findings, we are not called upon to examine the evidence in order to resolve opposing contentions as to what it shows or to spell out and state such conclusions of fact as it may permit. The Commission is the fact-finding body, and the Court examines the evidence not to make findings for the Commission but to ascertain whether its findings are properly supported."

It follows that the motion for judgment on the pleadings should be sustained in each of these cases. An order may be prepared in accordance herewith.