## NEW YORK TELEPHONE CO. v. PRENDERGAST et al.

(District Court, S. D. New York. July 26, 1924.)

**1. Telegraphs and telephones ⬥33(1)—Reproduction cost is dominant element in rate base ascertainment.**

While no one element is exclusive of all others, reproduction cost less depreciation is the dominant element in rate base ascertainment.

**2. Telegraphs and telephones ⬥33(1)—Valuation of property for rate-fixing purposes held made on erroneous basis.**

Establishing the value of the property of a telephone company for rate-making purposes from the book cost, less the book reserve for depreciation, *held* erroneous.

**3. Telegraphs and telephones ⬥33(1)—Valuation for rate-making purposes must be in terms of present money.**

Valuation of the property of a telephone company for rate-making purposes must be in terms of present prices and present money.

**4. Telegraphs and telephones ⬥33(1)—Going value element of valuation for rate purposes.**

In the valuation of the property of a telephone company for rate-making purposes, going value is an element to be considered.

**5. Telegraphs and telephones ⬥33(1)—Enforcement of rates prescribed by state commission enjoined.**

Enforcement of rates prescribed by Public Service Commission for a telephone company restrained by preliminary injunction, where it was conceded that the rates, in force for a year, had failed to produce the returns which the commission determined to be fair.

**6. Telegraphs and telephones ⬥33(1)—Application for increase of rates held not to bar suit for injunction.**

Application by a telephone company under the state statute for an increase in the rates prescribed by the Public Service Commission, not acted on by the commission, *held* not to bar a suit to enjoin enforcement of such rates.

In Equity. Suit by the New York Telephone Company against William A. Prendergast and others, constituting the Public Service Commission of New York, Carl Sherman, Attorney General of New York, and others. On motion for preliminary injunction. Granted.

Motion for injunction pendente lite, restraining defendants from compelling observance of certain orders made by the Public Service Commission on January 25, 1923, prescribing the rates to be charged by plaintiff for telephone service furnished within the state of New York. Ground of motion is that the rates so prescribed do not and will not afford plaintiff a fair return upon the fair and reasonable value at the time of use of its property used in and exclusively devoted to the service on account of which the rates were established. Wherefore said rates are in effect confiscatory and violative of the Fourteenth Amendment to the Constitution of the United States.

John W. Davis, of New York City (Edward L. Blackman, Charles T. Russell, and Frankland Briggs, all of New York City, on the brief), for plaintiff.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Charles G. Blakeslee, of Binghamton, N. Y., for Public Service Commission.

M. Maldwin Fertig, of New York City (George P. Nicholson, City Sol., of New York City, on the brief), for city of New York.

Edward G. Griffin, Deputy Atty. Gen., and Max H. Winkler, of New York City, for defendant Sherman.

Before HOUGH, Circuit Judge, and KNOX and WINSLOW, District Judges.

PER CURIAM. One issue, if not the major issue, raised by the bill of complaint herein, is that the rates established by the orders complained of, not only do not in fact permit a fair return upon the value of plaintiff's property used in the regulated service, but that said orders "were not intended" to permit such a return. Into the question of intent we need not enter at present, for the motion at bar only requires answer to the query whether the rates establishd by order of the principal defendant, are now yielding and have for a reasonable test period yielded an unfair and confiscatory rate of return upon an even possibly fair and legal rate base.

It is, however, appropriate, and even necessary, briefly to consider the origin of, and the fact findings underlying, the rates against which relief is sought. There was nothing precipitate or hurried about the entry of these orders; the inquiry preceding them extended over more than a year, and produced a record of many thousand pages; decision was filed January 25, 1923, and on the same day two orders based on that decision were entered; one regulating charges in New York City, one doing the same for the rest of the state.

The commission's decision holds that the rates should be based "upon the reasonable fair value of the property" used in rendering the regulated service, "as it exists at the time of the hearing," and declares such value to be as follows:

| | |
|---|---|
| Total fair value in state of New York as of December 31, 1921.. | $244,081,730 |
| Additions for 1922 .............. .......................... | 34,900,000 |
| Construction for 1923 (estimated).......................... | 34,300,000 |
| Fair value for 1923 ........................................ | $313,281,730 |
| Working capital ........................................... | 10,497,500 |
| | $323,779,230 |
| Deduct accrued depreciation .............................. | 77,596,739 |
| Rate base for 1923 ....................................... | $246,182,491 |

As to theory of valuation, or how "fair value" should be ascertained, the commission seems to have treated the investigation as if it were a suit, with the telephone company appearing as plaintiff, and divers municipalities, especially the city of New York, as defendants. Thus the decision declares that "the claims of the *parties* essentially differ as to whether valuation should be based on reproduction cost or book cost"; the telephone company (as stated by the commission) contending that "reproduction cost is the one rule that must be followed."

This contention the commission rejected. Whether it rejected the rule in toto, or gave any weight to the evidence regarding reproduction

cost, is not revealed; but the result proves that the leading element in reaching the declared rate base was book cost, treated in a manner to which we will refer again.

The "accrued depreciation," deducted from "fair value" to reach a rate base, is the aggregate of the depreciation reserve, or of charges made to expense, at monthly or other frequent intervals, of certain percentages of the cost of plaintiff's property. The percentage varies according to the kind of property, the average being substantially 5 per cent. during the last year. Depreciation must be charged under the uniform system of accounts imposed on public utilities, as well as under any theory of good business.

These accumulated charges are not a separate fund. The total bears no definite relation to the actual condition of the property; for one item may have been and was charged years ago against the cost of an article scrapped long since, while another was charged yesterday against one just entering upon its life of usefulness. In fact, the depreciation reserve is a piece of bookkeeping, a monthly charge against earnings, to provide means, not only of covering deterioration from use and time, but of minimizing, and only minimizing, future possible losses of any kind, from storm or fire to changes of fashion. The funds or credits thus reserved are, and always have been, expended in strengthening the company's useful property, but what particular property it is neither possible nor useful to ascertain.

The commission's rate base next excludes all "going value," on the ground that the burden of proving the existence of such a thing was on the telephone company, and the proof was "insufficient." Having established a rate base, the charges authorized were designed to produce 7 per cent. thereon, although—as the commission reported to the Legislature in January, 1924—"8 per cent. has been generally allowed by courts and commissions."

The decision filed January 25, 1923, concludes that the rates decreed "are for the future. * * * Actual experience will be the test as to whether further revision is necessary. If such is indicated, it may be made on the rate bases here found, without protracted hearings and delay." A year later, the commission's report to the Legislature stated that, according to monthly statements of revenues and expenses furnished as ordered by the telephone company, the new rates had, during ten months of operation, failed to earn 7 per cent. on the rate base by $2,971,774.

On January 23, 1924, the telephone company, pursuant to section 97, Public Service Commission Law, petitioned for an "immediate temporary reasonable increase of rates." This application also seems to have been treated by the commission as a litigation between the telephone company and the city of New York, and, no relief "without protracted hearings and delay" being forthcoming on May 1, 1924, plaintiff began this suit and procured the order to show cause with temporary injunction, under which the present motion was heard.

[1] In our opinion, plaintiff is justified in complaining of this procedure and result on several counts. By a long line of decisions, of which Monroe, etc., Co. v. Michigan (D. C.) 292 Fed. 139, is one of

the latest, reproduction costs less depreciation is the dominant element in rate base ascertainment. No one element is exclusive of all others, but the decision complained of deliberately lays aside as unimportant, all serious consideration of reproduction cost.

[2] Book cost has plainly been most relied on,[1] and in the case of businesses organized under modern systems of record keeping it seems like backing experience against opinion to pursue this course. But just so far as cost is relied on, the question, whose cost is under consideration? becomes the more important. Of course, it is the cost to this plaintiff that must be considered, and it makes no difference whether that cost was high or low, if fact evidence is demanded. Of course, also, a thing may not be worth what it cost; but that only shows the infirmity of the evidence. To seek, as seems to have been attempted, to transform actual cost into a theoretical cost at "normal prices," deprives the evidence of its attractiveness as being matter of fact, and makes it only opinion evidence of rather a poor kind.

[3] The goal of investigation is present value, and, since all value rests on the appreciation or estimate of users of the thing valued, all value is matter of opinion, and a good opinion is only ripened experience. Again, value for practically every legal purpose can be expressed only in terms of money, and present value can only be stated in terms of present money. It makes no difference that some regard prices as inflated, and others think dollars deflated; we have no other way of expressing present prices or values except in present money.

We do not attempt to make any finding as to the potency or persuasiveness of the opinion evidence adduced before the commission, but do hold it to be an erroneous method of procedure, in the ascertainment of present value (Willcox v. Consolidated, 212 U. S. 19, at page 52, 29 Sup. Ct. 192, 53 L. Ed. 382, 48 L. R. A. [N. S.] 1134, 15 Ann. Cas. 1034; The Minnesota Rate Cases, 230 U. S. 352, at page 454, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. [N. S.] 1151, Ann. Cas. 1916A, 18) to regard book costs, whether transmogrified to "normalcy" or not, as proof of a better kind than opinion evidence. To deduct from the fair value of plaintiff's property the entire book reserve for depreciation, in order to reach a rate base, was error of law. In point of fact the property had not depreciated that much; the commission did not find any such depreciation. It did hold that plaintiff was estopped by the figures of the book reserve; it was "bound by its own contention," because "these depreciation reserves represent the company's own best estimate of the extent to which their own property has aged." Decision, p. 45

This is merely untrue; the book charges represent what observation and experience suggested as likely to happen, with some margin over. The legal error is in not recognizing that the law requires deduction only for actual depreciation, just as actual as the present value, and the extent of that depreciation must be ascertained by the same kind of evidence; in the last analysis, opinion based on contemporary investigation. The rule enforced by the commission would cause some

---

[1] How closely the commission's fair value corresponds to book cost may be seen by comparing pages 38, 42, and 53 of the decision filed January 25, 1923.

alarm, if a catastrophe of nature instantly produced a deterioration of 50 per cent. when the book reserve was but half that amount; yet a real estoppel must always be mutual, and it is a poor rule that does not work both ways.

[4] The denial of any allowance for going value was also error of law. The quantum of that value we are not attempting to estimate or declare, but its existence is obvious from the decision itself. There has been, and probably will continue to be, much difference of opinion as to how to measure this kind of property; but in its nature it is a mere function or attribute of successful co-ordinated effort. A garment is made out of cloth and silk, buttons, and thread, and by labor; but when completed and well made its value is more than the aggregate cost of the items. It is a going concern, and as such has going value.

It is found that this plaintiff was created, and does function, and functions very well; therefore it has going value, because it goes well. The amount may be difficult of ascertainment, but that going value exists is self-evident. The rate of return on property is a matter of custom, and custom is fundamentally opinion.

Admittedly it is and has been customary to allow as a reasonable rate of return for regulated businesses like this one, 8 per cent. The justification for the custom is the habit of business men, and a departure therefrom is not right because a court or commission prefers a lower rate. Reasons are wanted, and none are set forth in this record. Under such circumstances there is no presumption of correctness attaching to the 7 per cent. limit. The question always raised in rate cases is this: What rate of return, with due regard to certainty and security, will attract the intelligent investor? It remains to be seen whether a departure from the present customary rate is warranted by modern conditions

We have stated the foregoing principles, because presumptively this suit is to be tried, and in accordance with principle.

[5] As for the injunction pendente lite, it stands admitted by the principal defendant that for a year the rates prescribed have failed to meet the expectation of their makers, and have entailed on plaintiff a wholly irrevocable loss of $3,000,000. It is now, however, asserted that plaintiff should have been more economical in respect of charging depreciation, and thereby diminishing net returns; that the regulated service covers only a part of the intrastate activities of plaintiff; and that since plaintiff made application for relief under section 97, Public Service Commission Law (Consol. Laws, c. 48), this suit cannot be maintained.

As to the first point, we are fully satisfied that plaintiff has for substantially a year complied with the suggestion or directions of the commission as to charges for depreciation, and that prevents any of the defendants objecting to its conduct in this regard.

As to the second, the truth is that the commission found as a rate base the asserted fair value, less assumed depreciation of plaintiff's property in the state of New York, and devoted to intrastate service. The service rates allowed completely cover nearly 90 per cent. of all business done; only the small remaining fraction of business is af-

fected by interstate communication, e. g., using a New York telephone to communicate with a person without the state. We see no reason to doubt that the various proratings on interstate business have been properly done. Furthermore, the whole volume of interstate business is so small compared with the wholly regulated business, that it cannot affect results.

[6] As to the third point, a reference to Pacific Telephone Co. v. Kuykendall, 44 Sup. Ct. 553, 68 L. Ed. —— (May 23, 1924), is sufficient.

Let the injunction, as embodied in the order to show cause herein, issue forthwith.