# RAILROAD COMMISSION OF CALIFORNIA ET AL. v.
# PACIFIC GAS & ELECTRIC CO.

No. 804 (October Term, 1936). Argued April 30, 1937. Reargued
November 11, 1937.—Decided January 3, 1938.

*Mr. Ira H. Rowell* for appellants, on the original argument and the reargument.

*Mr. Warren Olney, Jr.* for appellee, on the original argument and the reargument. *Messrs. Allen P. Matthew* and *Robert L. Lipman* were with him on the briefs.

*Mr. Oswald Ryan,* General Counsel, (with whom *Messrs. Thomas J. Tingley* and *William C. Koplovitz* were on a brief submitted by *Solicitor General Reed*), for the Federal Power Commission as *amicus curiae,* by special leave of Court, on the reargument, in support of appellants.

By leave of Court, briefs of *amici curiae* were filed by *Messrs. Hampson Gary,* General Counsel, *Carl I. Wheat, Milford Springer, Robert E. May, Frank B. Warren* and *Basil P. Cooper,* on behalf of the Federal Communications Commission; *Messrs. John C. Kelley* and *Charles J. Margiotti,* Attorney General of Pennsylvania, on behalf of the Pennsylvania Public Utility Commission; *Messrs. John E. Benton* and *Clyde S. Bailey,* on behalf of the

National Association of Railroad and Utilities Commissioners,—all in support of appellants.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

This is an appeal from a final decree of the District Court, composed of three judges (28 U. S. C. 380), permanently enjoining an order of the Railroad Commission of the State of California.

The Commission by its order on November 13, 1933, in a proceeding instituted on its own motion, fixed rates for gas supplied by respondent. In this suit, the validity of the order was challenged as depriving respondent of property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States. An interlocutory injunction was granted and the cause was referred to a special master. The parties stipulated for the submission of the cause upon the record made before the Commission with certain supplementary evidence. Following a hearing, the master on the basis of findings as to value, expenses and revenues, concluded that the rates prescribed were confiscatory and void. 13 F. Supp. pp. 931, 932. The District Court expressly stated that it did "not pass upon the factual exceptions to the master's report" and did "not approve or reject his findings as to the fair value" of the property "or determine the net income" which would result from the assailed rates, "or determine what would be a fair rate of return," but rested its decision "solely upon the denial of due process of law by the Commission in fixing the rates in question." Id., p. 936. Rehearing was denied. 16 F. Supp. 884. On appeal here the decree was affirmed by an equally divided court. 301 U. S. 669. Reargument was ordered (October 11, 1937) and has been had.

The parties have not brought before us the evidence that was taken before the Commission or that was before

the court below, with the exception of certain affidavits by the president of the respondent and the president of the Commission, respectively, in relation to the proceedings before the Commission. Respondent has in effect challenged the action of the Commission as invalid upon the face of its opinion and order. 39 Cal. R. Com. 49. Appellants have accepted that challenge.

1. Respondent seeks to sustain the decree upon the ground that the Commission's order was not authorized by the state law. Because of the federal question raised by the bill of complaint, the District Court had jurisdiction to determine all the questions in the case, local as well as federal. *Siler* v. *Louisville & Nashville R. Co.*, 213 U. S. 175, 191; *Louisville & Nashville R. Co.* v. *Garrett*, 231 U. S. 298, 303; *United Fuel Gas Co.* v. *Railroad Commission*, 278 U. S. 300, 307.

The state statute to which our attention is directed (§ 32 of the California Public Utilities Act, Cal. Stat., 1923, p. 837, set forth in the margin)[1] provides that whenever the Commission after a hearing shall find the existing rates charged by a public utility to be unjust, unreasonable, discriminatory or preferential, the Commission shall

---

[1] "Sec. 32. *Power to change unjust rates. Power to fix new rates. Preservation of adequate service.* (a) Whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that the rates, fares, tolls, rentals, charges or classifications, or any of them, demanded, observed, charged or collected by any public utility for any service or product or commodity, or in connection therewith, including the rates or fares for excursion or commutation tickets, or that the rules, regulations, practices or contracts, or any of them, affecting such rates, fares, tolls, rentals, charges or classifications, or any of them, are unjust, unreasonable, discriminatory or preferential, or in any wise in violation of any provision of law, or that such rates, fares, tolls, rentals, charges or classifications are insufficient, the commission shall determine the just, reasonable or sufficient rates, fares, tolls, rentals, charges, classifications, rules, regulations, practices or contracts to be thereafter observed and in force, and shall fix the same by order as hereinafter provided."

determine the just and reasonable rates to be thereafter in force. In this instance, the Commission's order shows on its face that the Commission found the existing rates to be unjust and unreasonable. 39 Cal. R. Com., p. 77. So far as respondent contends that this finding was not sustained by evidence, it is sufficient to say that the evidence is not here and we cannot say that the ruling lacked support.

Respondent states that it was denied a proper hearing, but the record shows that the Commission held extended hearings, at which the evidence offered by respondent was received and its arguments were presented.[2] 39 Cal. R. Com., p. 51. While these hearings were in progress, and on June 16, 1933, respondent was cited to show cause why interim rates should not be put into effect pending the proceeding. Respondent stipulated that it would complete the presentation of its evidence before October 1, 1933, and that the rates which the Commission established in the proceeding might, if lower than the existing rates, be made retroactive so as to apply to meter readings made after July 16, 1933, and before November 15, 1933. That date was later changed by stipulation to January 1, 1934. *Id.*, pp. 52, 53.

We have not been referred to any state decisions warranting the conclusion that the Commission did not afford a hearing in accordance with the state law. We turn to the constitutional question.

2. As the District Court did not deal with the issue of confiscation and the evidence is not before us, we are concerned only with the question of procedural due proc-

---

[2] The opinion of the Commission states that "In all, 81 exhibits were introduced presenting in great detail the underlying data of this proceeding, and 3729 pages of testimony and argument were transcribed. Many witnesses testified upon various issues pertaining to a general rate case." The opinion lists the witnesses on both sides. 39 Cal. R. Com., pp. 51, 52.

ess, that is, whether the Commission in its procedure, as distinguished from the effect of its order upon respondent's property rights, failed to satisfy the requirements of the Federal Constitution. We examine this question in the light of well settled principles governing the proceedings of rate-making commissions.

The right to a fair and open hearing is one of the rudiments of fair play assured to every litigant by the Federal Constitution as a minimal requirement. *Ohio Bell Telephone Co.* v. *Public Utilities Comm'n,* 301 U. S. 292, 304, 305. There must be due notice and an opportunity to be heard, the procedure must be consistent with the essentials of a fair trial, and the Commission must act upon evidence and not arbitrarily. *Interstate Commerce Comm'n* v. *Louisville & Nashville R. Co.,* 227 U. S. 88, 91; *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38, 51, 73; *Morgan* v. *United States,* 298 U. S. 468, 480–481; *Ohio Bell Telephone Co.* v. *Public Utilities Comm'n, supra.* As we have seen, the respondent was heard, the Commission received the testimony of respondent's witnesses, its exhibits and arguments. There is nothing whatever to show that the hearing was not conducted fairly.

The complaint is not of the absence of these rudiments of fair play but of the method by which the Commission arrived at its result. As to this a fundamental distinction must be observed. While a fair and open hearing must be accorded as an inexorable safeguard, we do not sit as an appellate board of revision but to enforce constitutional rights. *San Diego Land & Town Co.* v. *Jasper,* 189 U. S. 439, 446. When the rate-making agency of the State gives a fair hearing, receives and considers the competent evidence that is offered, affords opportunity through evidence and argument to challenge the result, and makes its determination upon evidence and not arbitrarily, the requirements of procedural due process are

met, and the question that remains for this Court, or a lower federal court, is not as to the mere correctness of the method and reasoning adopted by the regulating agency but whether the rates it fixes will result in confiscation.

We have recently had occasion to emphasize this distinction in passing upon an order of the appellant Commission in the case of *Los Angeles Gas Co.* v. *Railroad Commission,* 289 U. S. 287, 304, 305. We said:

"The legislative discretion implied in the rate making power necessarily extends to the entire legislative process, embracing the method used in reaching the legislative determination as well as that determination itself. We are not concerned with either, so long as constitutional limitations are not transgressed. When the legislative method is disclosed, it may have a definite bearing upon the validity of the result reached, but the judicial function does not go beyond the decision of the constitutional question. That question is whether the rates as fixed are confiscatory. And upon that question the complainant has the burden of proof and the Court may not interfere with the exercise of the State's authority unless confiscation is clearly established."

This controlling principle was reiterated, with due emphasis upon the necessity of a fair hearing, in the case of *West Ohio Gas Co.* v. *Public Utilities Comm'n, (No. 1),* 294 U. S. 63, 70, in these words:

"Our inquiry in rate cases coming here from the state courts is whether the action of the state officials in the totality of its consequences is consistent with the enjoyment by the regulated utility of a revenue something higher than the line of confiscation. If this level is attained, and attained with suitable opportunity through evidence and argument (*Southern Ry. Co.* v. *Virginia,* 290 U. S. 190) to challenge the result, there is no denial of due process, though the proceeding is shot through with

irregularity or error." The statement is equally applicable, as the *Los Angeles* case shows, when the order of a state commisison is assailed in a federal court.

3. The gravamen of respondent's complaint is that the Commission refused to consider the fair value of respondent's property and in fixing the rate base "gave weight and effect solely to the historical cost."

Respondent supports its contention by referring to the statement of the Commission that during its entire history, "to determine a proper rate base this Commission has used the actual or estimated historical costs of the properties undepreciated, with land at the present market value," and, consistently with that, the Commission has "used the sinking fund method to determine the allowance for depreciation to be included in operating expenses." The Commission gave its reasons why this "historical method has dominated the Commission's findings." 39 Cal. R. Com., pp. 57, 58. The text of this portion of the Commission's statement is given in the margin.[3] Refer-

---

[3] "During its entire history in establishing reasonable rates for utilities similar to this company, to determine a proper rate base this Commission has used the actual or estimated historical costs of the properties undepreciated, with land at the present market value. Consistent with this, it has used the sinking fund method to determine the allowance for depreciation to be included in operating expenses.

"This historical method has dominated the Commission's findings for several principal reasons. It is well grounded upon established facts, is not subject to the vagaries of pet theories, unlimited imagination and abrupt fluctuation of current prices and passing conditions, and therefore indicates a truer measure of value upon which, through the application of rates, a return may be allowed to reimburse the owner for his enterprise and insure the integrity of his capital honestly and prudently invested. At the same time it prevents unwarranted demands upon the consumer through the projections of future rates on ephemeral values and stabilizes rates so that economic shocks from such changes are reduced to a minimum.

"It is an economical procedure, where the books of the companies are reasonably well kept, as obtains in practically all of the major

ence is also made to statements of the Commission in its supplemental investigation in the light of the opinion of the District Court on the motion for an interlocutory injunction. *Id.,* pp. 198, 202; 5 F. Supp. 878.

But it does not follow from these statements that the Commission refused to receive evidence of the cost of reproduction or to consider that or other evidence presented by respondent with respect to the value of its property. The contrary clearly appears.

Respondent submitted to the District Court affidavits of its president setting forth its contention that no consideration was given to reproduction cost. This contention was combatted by an affidavit of the president of the Commission in which it is stated that the Commission gave careful consideration to all the testimony of record relative to value and to the testimony offered by respondent respecting reproduction cost. These affidavits are of slight value as we have the official opinion of the Commission stating the course which it pursued. That opinion shows precisely what the Commission has done in this instance. The Commission states, 39 Cal. R. Com. p. 64:

"Testimony regarding the cost to reproduce the properties here under consideration was presented by the company's valuation engineer on several price bases, all being developed through the application of price translation factors, and not through the application of appropriate prices to an inventory of the property. In each pricing period offered the estimate to reproduce was higher than the historical cost. For the first six months' period of 1933 the reproduction cost was shown as 8 per cent higher than historical. A perusal of price trend charts intro-

utilities of this State, full compliance with which will prevent unwarranted expenditures of money by the Commission, the public and the company, which inures to the benefit of both the consumers and the utility. It is a more rapid procedure insuring quicker compliance with necessities as they arise."

duced by the company elsewhere in the proceedings indicates that the estimate must be in error. It is not conceivable that a property, 80 per cent. of which has been constructed in the high price period following 1919, could not be reproduced for a lesser cost under prices prevailing in the first six months of 1933. Witness for the city of San Francisco clearly indicated why the estimate was erroneous when he showed that the method used ignored certain factors tending in later years to decrease cost, such as improvement in construction materials and methods, increased use of mechanical equipment and a lessening in the width of the excavations and pavement cut. The estimates of cost to reproduce are not at all convincing and cannot be of positive value in this proceeding."

The Commission was entitled to weigh the evidence introduced, whether relating to reproduction cost or to other matters. The Commission was entitled to determine the probative force of respondent's estimates. That the Commission did so is apparent from both its statement to that effect and the reasons it gives for considering these estimates to be without positive value. The Commission compared them with other evidence and found the estimates to be erroneous. It found that 80 per cent. of the property had been constructed in the prior "high price period" and the Commission thought it inconceivable that the property could not be reproduced "for a lesser cost under prices prevailing in the first six months of 1933." These statements not only do not suggest but definitely rebut an inference of arbitrary action.

There is no principle of due process which requires the rate making body to base its decision as to value, or anything else, upon conjectural and unsatisfactory estimates. We have had frequent occasion to reject such estimates. *Minnesota Rate Case,* 230 U. S. 352, 452; *Los Angeles Gas Co.* v. *Railroad Commission, supra,* pp. 307, 310, 311;

*Lindheimer* v. *Illinois Bell Telephone Co.*, 292 U. S. 151, 163, 164. Whether in this instance the Commission was in error in treating respondent's estimates as without probative force, we have no means of knowing as the evidence is not before us, but its error in that conclusion, if error there be, was not a denial of due process. *Los Angeles Gas Co.* v. *Railroad Commission, supra; Ohio Bell Telephone Co.* v. *Railroad Commission, supra.*

Nor did the ruling with respect to the weight of evidence as to reproduction cost leave the Commission without evidence of the value of respondent's property. We have frequently held that historical cost is admissible evidence of value. For example, in the *Los Angeles* case we said that "no one would question that the reasonable cost of an efficient public utility system 'is good evidence of its value at the time of construction,'" and that "such actual cost will continue fairly well to measure the amount to be attributed to the physical elements of the property so long as there is no change in the level of applicable prices," citing *McCardle* v. *Indianapolis Water Co.*, 272 U. S. 400, 411. And we added that "when such a change in the price level has occurred, actual experience in the construction and development of the property, especially experienced in a recent period, may be an important check upon extravagant estimates." *Los Angeles Gas Co.* v. *Railroad Commission, supra,* p. 306. While the Court has frequently declared that "in order to determine present value, the cost of reproducing the property is a relevant fact which should have appropriate consideration," we have been careful to point out that "the Court has not decided that the cost of reproduction furnishes an exclusive test" and in that relation we have "emphasized the danger in resting conclusions upon estimates of a conjectural character." *Los Angeles Gas Co.* v. *Railroad Commission, supra,* p. 307. And in the *Los Angeles* case, with the evidence before us which had been

taken by the Commission and by the District Court, we held that on that evidence it did not appear to be "unfair to the Company, in fixing rates for the future, to take the historical cost as found by the Commission as evidence of the value of the Company's structural property at the time of the rate order." *Id.*, p. 309. In the instant case we cannot say that the Commission in taking historical cost as the rate base was making a finding without evidence and therefore arbitrary.

The decisions cited by respondent do not require a different conclusion. In *Northern Pacific Ry. Co.* v. *Department of Public Works*, 268 U. S. 39, 43–45, we said that the Commission's action in reducing rates by an order dependent wholly "upon a finding made without evidence" or "upon a finding made upon evidence which clearly does not support it" in the face of unchallenged evidence of probative value showing that the rates were already confiscatory, was an arbitrary act and a denial of due process. In so ruling, we fully recognized the principle that "mere error in reasoning upon evidence introduced" does not invalidate an order. In *Chicago, M. & St. P. Ry. Co.* v. *Public Utilities Comm'n*, 274 U. S. 344, the Idaho Commission and the state court had refused "to consider the evidence introduced by the carriers to show that the rates in question are too low and confiscatory." In *West* v. *Chesapeake & Potomac Telephone Co.*, 295 U. S. 662, upon which the District Court relied, the Court took the view that the Commission had based its action upon the application of "general commodity indices to a conglomerate of assets constituting a utility plant," and had resorted, on account of the wide variation of results caused by the use of different indices, to what the Court described as a "rule of thumb corrective" by "weighting the several indices upon a principle known only to itself," and had substituted that sort of calculation "for such factors as historical cost and cost of re-

production." In that view, the Court thought that the Commission had acted arbitrarily, and hence that its order fell within the principle of the *Northern Pacific* case. No such procedure appears here. In *St. Louis & O'Fallon Ry. Co.* v. *United States,* 279 U. S. 461, the Court was not dealing with the order of a state commission, or with a question of due process, but with the command of Congress addressed to the Interstate Commerce Commission in relation to its valuations of railway property. The Court construed that command and found that it had not been obeyed.

4. The contention that the Commission failed to find the fair value of respondent's property presents substantially the same question in another form. What the Commission found appears by its own opinion. The court below was bound to go to that opinion to ascertain the Commission's findings. The Commission specifically found what it considered to be the rate base. 39 Cal. R. Com., p. 76. The Commission found that rate base to be reasonable. *Id.,* p. 77, note. The import of its opinion is that the rate base represented the Commission's conclusion as to the value which should be placed upon respondent's property for the purpose of fixing rates. It was upon that valuation that the Commission distinctly ruled that the rates it established would "assure the Company a fair return on its properties." Respondent was entitled to contest the value thus placed upon its properties, or any part of them, to insist that the value taken as the rate base was too low, and that in consequence the prescribed rates were confiscatory. That was the issue upon which the court below should have passed. But respondent cannot successfully contend that it was not heard by the Commission, that the evidence respondent offered was not received and considered, and its competency and weight determined by the Commission, or that the Commission did not place its valuation upon

the property and fix the rates upon the basis of that valuation. Respondent utterly fails to show that in the procedure of the Commission it was denied due process of law.

5. There is a further contention as to the burden of proof. But the applicable rule is clear. Respondent is in a federal court complaining of the constitutional invalidity of state-made rates and respondent is held to the burden of showing that invalidity by convincing proof. *Los Angeles Gas Co.* v. *Railroad Commission, supra,* p. 305; *Lindheimer* v. *Illinois Bell Telephone Co., supra,* p. 169; *Dayton Power & Light Co.* v. *Public Utilities Comm'n,* 292 U. S. 290, 298.

Respondent suggested in the argument at bar that the Court should direct the evidence to be sent up for the purpose of determining the points presented on this appeal. We see no sufficient reason for that course. The parties agreed upon the record to be submitted.

The main issue in this litigation is whether the rates as fixed by the Commission's order are confiscatory. The District Court did not determine that issue. The District Court should determine it. The decree is reversed and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE BLACK concurs in the reversal of the decree.

MR. JUSTICE SUTHERLAND took no part in the consideration and decision of this case.

MR. JUSTICE BUTLER, dissenting.

The district court held that the commission refused to consider the company's evidence of the cost of reproduction and failed to find the value of the property used to furnish the gas covered by the challenged rates. On that basis of fact, it was bound by our decisions to set aside

the order as repugnant to the due process clause of the Fourteenth Amendment.[1]

This Court holds that the commission did consider the cost of reproduction and that error, if any, in appreciation of that item of evidence would not be a denial of due process. But as to whether the commission found or did not find value, the opinion is not clear. It states that the commission "specifically found what it considered to be the rate base," found "that rate base to be reasonable," and that "The import of its opinion is that the rate base represented the Commission's conclusion as to the value which should be placed upon respondent's [appellee's] property for the purpose of fixing rates."[2] If the decision goes on the ground that the commission found and based its order on the value of the company's property, it rests on a fundamental fact without support in the record and contrary to the special master's opinion and the district court's finding, which appellants do not here challenge. If the decision goes on the ground that the commission based its determination upon historical cost, then it is directly contrary to our earlier decisions, and reverses the lower court for doing what they required it to do— enter a decree setting aside the order as having been made without procedural due process of law.

As to value.—Since by legislation fixing their charges, public utilities are compelled to use their properties in the service of the public, due process of law requires that

---

[1] *Northern Pacific Ry. Co.* v. *Dept. Public Works,* (1925) 268 U. S. 39; *Chicago, M. & St. P. Ry.* v. *Public Utilities Comm'n,* (1927) 274 U. S. 344; *West* v. *C. & P. Tel. Co.,* (1935) 295 U. S. 662. See also the opinions of the district court in this case, 5 F. Supp. 878, 13 F. Supp. 931 and 16 F. Supp. 884.

[2] See the Court's opinion, *ante,* p. 400. It there quotes part of a sentence near the end of the commission's report: "assure the Company a fair return on its properties." (39 C. R. C. 49, 76.) Taken with other parts of the report, these words emphasize the commission's purpose not to find value.

the rates prescribed shall be sufficient to yield them just compensation; i. e., reasonable rates of return upon the value of their properties.[3] The value to be ascertained is the money equivalent of the property, the amount to which the owner would be entitled upon expropriation.[4] It is elementary that cost is not the measure of value.[5]

In *Smyth* v. *Ames*, (1898) 169 U. S. 466, the Court said (p. 546): "We hold, however, that the basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property being used by it for the convenience of the public. And in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property. What the company is entitled to ask is a

---

[3] *Railroad Commission Cases*, (1886) 116 U. S. 307, 331; *Dow* v. *Beidelman*, (1888) 125 U. S. 680, 691; *Georgia Railroad & Banking Co.* v. *Smith*, (1888) 128 U. S. 174, 179; *Chicago, M. & St. P. Ry. Co.* v. *Minnesota*, (1890) 134 U. S. 418, 458; *Reagan* v. *Farmers' Loan & T. Co.*, (1894) 154 U. S. 362, 399; *Ames* v. *Union Pacific Ry. Co.*, (1894) 64 F. 165, 176; *Smyth* v. *Ames*, (1898) 169 U. S. 466, 526, 541, 542, 544, 546.

[4] *Monongahela Navigation Co.* v. *United States*, (1893) 148 U. S. 312, 327; *Seaboard Air Line Ry.* v. *United States*, (1923) 261 U. S. 299, 304; *Brooks-Scanlon Corp.* v. *United States*, (1924) 265 U. S. 106, 123; *Jacobs* v. *United States*, (1933) 290 U. S. 13, 16–17; *Olson* v. *United States*, (1934) 292 U. S. 246, 255.

[5] *Smyth* v. *Ames*, (1898) 169 U..S. 466, 546, 547; *Willcox* v. *Consolidated Gas Co.*, (1909) 212 U. S. 19, 52; *Missouri ex rel. S. W. Bell Tel. Co.* v. *Public Service Comm'n*, (1923) 262 U. S. 276, 287.

fair return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to demand is that no more be exacted from it for the use of a public highway than the services rendered by it are reasonably worth."

In *Minnesota Rate Cases*, (1913) 230 U. S. 352, the Court said (p. 434): "The basis of calculation is the 'fair value of the property' used for the convenience of the public. . . . The ascertainment of that value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts. . . . [p. 454.] It is clear that in ascertaining the present value we are not limited to the consideration of the amount of the actual investment. . . . As the company may not be protected in its actual investment, if the value of its property be plainly less, so the making of a just return for the use of the property involves the recognition of its fair value if it be more than its cost. The property is held in private ownership and it is the property, and not the original cost of it, of which the owner may not be deprived without due process of law. . . ."

The principle applied in *Smyth* v. *Ames* has long governed wherever judicial action has been invoked to enforce the rule of just compensation.[6] It is binding upon

---

[6] For example, see:

*San Diego Land Co.* v. *National City*, (1899) 174 U. S. 739, 757; *San Diego Land Co.* v. *Jasper*, (1903) 189 U. S. 439, 442; *Stanislaus County* v. *San Joaquin C. & I. Co.*, (1904) 192 U. S. 201, 215; *Knoxville* v. *Knoxville Water Co.*, (1909) 212 U. S. 1, 13, 18; *Willcox* v. *Consolidated Gas Co.*, (1909) 212 U. S. 19, 41; *Lincoln Gas Co.* v. *Lincoln*, (1912) 223 U. S. 349, 358; *Minnesota Rate Cases*, (1913) 230 U. S. 352, 434, 454; *Missouri Rate Cases*, (1913) 230 U. S. 474, 498; *Denver* v. *Denver Union Water Co.*, (1918) 246 U. S. 178, 190; *Missouri ex rel. S. W. Bell Tel. Co.* v. *Public Service Comm'n*, (1923) 262 U. S. 276, 287; *Bluefield Co.* v. *Public Service Comm'n*, (1923)

state courts and commissions. But the California commission refuses to follow the established rule. It does not ascertain or use present value but in its place takes historical cost, actual or estimated, as the basis of its determination in rate judging and rate making.

In Rules, etc., of Los Angeles Gas & Electric Corp., (1930) 35 C. R. C. 443, 445, the commission said: "This commission for many years . . . has fixed rates to yield upon the historical or actual cost of the property, taking land, however, at current values and depreciation calculated on a sinking fund basis, a return somewhat in excess of the cost of the money invested in the property. . . ." [7]

So, in the practice of the commission, actual cost of all items other than land, which is included at its market value, comes to be called "historical cost," which when found to be, or modified to make it "reasonable," is called

262 U. S. 679, 690; *Dayton-Goose Creek Ry. Co. v. United States*, (1924) 263 U. S. 456, 481; *Ohio Utilities Co. v. Public Utilities Comm'n* (1925) 267 U. S. 359, 362; *Board of Comm'rs v. N. Y. Tel. Co.*, (1926) 271 U. S. 23, 31; *McCardle v. Indianapolis Water Co.*, (1926) 272 U. S. 400, 408, 409; *United Railways v. West*, (1930) 280 U. S. 234, 253–254; *Los Angeles Gas Co. v. Railroad Comm'n*, (1933) 289 U. S. 287, 305, *et seq.; West v. C. & P. Tel. Co.*, (1935) 295 U. S. 662, 671.

*Alton Water Co. v. Illinois Commerce Comm'n*, (1922) 279 F. 869, 872; *Minneapolis v. Rand*, (1923) 285 F. 818, 827; *Mobile Gas Co. v. Patterson*, (1923) 293 F. 208, 214; *New York Telephone Co. v. Prendergast*, (1924) 300 F. 822, 825; *Southern Bell Tel. & Tel. Co. v. Railroad Comm'n*, (1925) 5 F. (2d) 77, 91, 92; *Middlesex Water Co. v. Board of Public Utility Comm'rs*, (1926) 10 F. (2d) 519, 533; *Idaho Power Co. v. Thompson*, (1927) 19 F. (2d) 547, 552.

[7] See, e. g.: Re Coast Valleys Gas & Electric Co., (1917) 14 C. R. C. 460; Southern Sierras Power Co., (1920) 18 C. R. C. 818; Southern California Edison Co., (1921) 19 C. R. C. 595 and (1923) 23 C. R. C. 981; San Joaquin Light & Power Corp., (1922) 21 C. R. C. 545; Pacific Gas & Electric Co., (1922) 22 C. R. C. 744; Great Western Power Co., (1923) 22 C. R. C. 814; Pacific Tel. & Tel. Co., (1929) 33 C. R. C. 737.

"prudent investment" or "rate base."[8] The commission takes cost without regard to age of the items, changes in price levels, present cost to construct, depreciation, obsolescence or usefulness.

In that case, Commissioner Decoto, dissenting, said (p. 474): "The California Commission . . . has clung ostensibly and theoretically to the historical rate base. In reality it has given effect to the different elements mentioned by the federal courts including fair value including going value by allowing a rate return between 8 per cent and 8½ per cent on historical cost if there be added to the historical rate base an amount between 10 per cent and 12½ per cent, the rate base so obtained will approximate fair value including going value. So, also if there is deducted from 10 per cent to 12½ per cent from a rate of return of 8 per cent or 8½ per cent on an historical cost rate base, it is readily seen that there is an actual return varying from 7 per cent to 7.75 per cent upon fair value including therein a reasonable amount for going value. . . . During the last two years this commission has shown a tendency to cut the rate return upon an historical rate base from between 8 per cent and 8½ per cent to 7 per cent, which reduced the rate of return upon a fair value base to 6.12½ per cent and 6.3 per cent."

While the dissenting opinion is not authoritative and may not be taken to express the views of the commission, it usefully interprets and discloses the opinions, attitude and practice of the commission as to ascertainment of the figure or base on which it tests existing and prescribes future rates.

---

[8] For convenience these phrases, "historical cost," "actual cost," "prudent investment," and "rate base," will be used to mean the figure produced by the application of the formula expressed by the commission in Rules, etc. of Los Angeles Gas & Electric Corp., (1930) 35 C. R. C. 443, 445, without pausing to point out that land is included at present value.

In the case now before us, the commission used the formula generally applied by it. Its report states (39 C. R. C. 49, 57): "During its entire history in establishing reasonable rates for utilities similar to this company, to determine a proper rate base this Commission has used the actual or estimated historical costs of the properties undepreciated, with land at the present market value. . . . This historical method has dominated the Commission's findings for several principal reasons. It is well grounded upon established facts, is not subject to the vagaries of pet theories, unlimited imagination and abrupt fluctuation of current prices and passing conditions, and therefore indicates a truer measure of value. . . . At the same time it prevents unwarranted demands upon the consumer through the projections of future rates on ephemeral values and stabilizes rates so that economic shocks from such changes are reduced to a minimum."

The commission's figures show that it did not attempt or intend to find value. Historical cost was not fully disclosed by the company's records. A part was estimated. The company's total was $104,043,472; the commission found $103,252,004. From historical cost ascertained by it, the commission deducted "Donations in Aid of Construction, $34,325," added to the remainder "Materials and Supplies, $638,828," and "Working Cash Capital, $773,300," making a total of $104,629,807; and took the round figure, $105,000,000 as rate base. The commission made no appraisal to ascertain value, as distinguished from cost incurred for the original plant plus additions and betterments through all the years of operation. The exclusion of "Donations in Aid of Construction" is inconsistent with ascertainment of the value, for obviously the worth of property is the same whatever the source of the title or the money with which it was purchased.[9]

---

[9] *San Joaquin Co.* v. *Stanislaus County,* 233 U. S. 454, 459; *Board of Comm'rs* v. *N. Y. Tel. Co.,* (1926) 271 U. S. 23, 31; *Smith* v.

The report states that "In this case a return will be allowed substantially in excess of the reasonably determined cost of money in order that there be provided a safety factor in accordance with the principles adopted by this Commission to protect the financial structure as well as to allow for intangible values not covered by business development costs allowed in the operating expenses." [10]

The commission included nothing in its rate base to cover intangible elements of value. It said (p. 65): "Even if going value could be found here in a definite amount there are no proper elements of physical value found to which it might be related to obtain fair value. Under the record there is no tenable depreciated reproduction cost figure and it is wholly inconsistent to attempt to relate going value to undepreciated historical cost." This statement clearly and rightly implies that properly ascertained reproduction cost—condition and usefulness considered—indicates only the value attributable to the tangible elements and that to it there must be added the amount attributable to the intangible elements in order to find the value of both; i. e., the worth of the plant as a going concern.

Having taken cost of physical elements, the commission deemed it inappropriate to add anything to cover

*Illinois Bell Tel. Co.*, (1930) 282 U. S. 133, 158; *Public Service Co.* v. *Public Utility Comm'rs*, 84 N. J. L. 463, 481; 87 Atl. 651. See also *Minnesota Rate Cases*, (1913) 230 U. S. 352, 434, 456. Cf. dissenting opinion, *United Railways* v. *West*, (1930) 280 U. S. 234, 257.

[10] Our decisions unquestionably show that cost of development of the business is not the measure of the amount to be attributed to intangible elements of the property, or the measure of going value. *Des Moines Gas Co.* v. *Des Moines*, (1915) 238 U. S. 153, 168–171; *Denver* v. *Denver Union Water Co.*, (1918) 246 U. S. 178, 191, 192; *Galveston Electric Co.* v. *Galveston*, 258 U. S. 388, 395, *et seq.; Los Angeles Gas Co.* v. *Railroad Comm'n*, (1933) 289 U. S. 287, 314, 315.

existing going value. It must have found that in fact a large amount was justly attributable to going value, for it declared (p. 65) that it would accredit the company with "a reasonable recognition of going value through allowance as an operating expense of over $800,000 a year for development expense, which is approximately 7 per cent on the company's claimed going value figure, and by the additional allowance of return over reasonable cost of money."

But an allowance in operating expenses adds nothing to value or to return on value. It is not the equivalent of and may not be substituted for inclusion of an appropriate amount to cover intangible elements. Inclusion of an amount for development expenses increases deductions from gross revenue and so reduces annual net earnings, if any, by that amount, whereas the addition of $800,000 capitalized at 7 per cent would increase by over $11,000,000 the base on which to calculate return. The commission's treatment of donated property, going value and rate of return shows that it did not find value, and that it intended to and did adopt cost figures as the basis on which it condemned existing rates and ordered the new schedule.

Immediately after announcement of the report the company filed a petition for rehearing, in which it directly charged that the commission failed to find value, "considered solely the historical cost . . . and failed to consider or give any effect to the cost" of reproduction. The commission denied rehearing, but without in any manner suggesting that these allegations were not true.

In this suit, the complaint alleges that the commission failed to give any weight or effect to reproduction cost; "that, in fixing the rate base, the Commission gave weight and effect solely to the historical cost"; and that it prescribed the rates "without any finding of fair value."

The answer is a studied denial. The defendants do deny that the commission failed to give due weight to competent evidence of reproduction cost and allege that it gave proper weight to all the evidence, including evidence of reproduction cost; deny that the commission gave weight solely to the historical cost; "admit that in fixing and prescribing rates . . . the Commission did so without any specific finding as to 'fair value' . . . but . . . allege that in substance and effect the Commission concluded and found in its said decision that the fair value of the used and useful properties before allowing for accrued depreciation did not exceed the sum fixed therein as a reasonable rate base, to wit: $105,000,000."

The district court referred the case to a special master. There was introduced before him evidence in addition to that submitted to the commission. The record here does not contain the evidence, his findings or report.[11] But the trial court's opinion (13 F. Supp. 931, 932) states that, "While the master expressed the opinion that it appeared plain to him that the Commission used cost as the only measure of the rate base, itself offering no evidence on reproduction cost and rejecting that offered upon the subject by the company, he preferred not to pass upon the question of law thus presented, but to examine the whole matter on the merits."

In its opinion on temporary injunction (5 F. Supp. 878, 881), the court found that the commission rejected the company's estimates of reproduction cost, did not have

[11] It does contain the complaint, to which are attached the opinion and order of the commission; the company's petition for rehearing and order denying it; appellants' answer; the court's findings of fact, conclusions of law and final decree; the commission's petition for rehearing and affidavit in support of it; the company's answer to that petition, a supporting affidavit and one replying to it; the opinions of the court on motion for temporary injunction, on permanent injunction, and on petition for rehearing.

any detailed estimates of reproduction cost before it, and did not determine the reproduction cost of the property. Upon final submission of the case, the court found that the commission on its own motion instituted the investigation and "caused to be introduced evidence as to the past or so-called historical cost . . . solely for the purpose of determining such past or historical cost as in and of itself constituting the rate base by which to judge the reasonableness of the plaintiff's existing rates and to prescribe new rates, and . . . neither introduced nor caused to be introduced any evidence for the purpose of determining the fair value of the plaintiff's property or any evidence as to its reproduction cost. . . . Plaintiff introduced evidence as to the reproduction cost of its said property and as to its fair value." No evidence was introduced to rebut that offered by the plaintiff.

". . . On the conclusion of said hearings . . . the Commission made its order . . . finding that the existing rates of the plaintiff were unjust and unreasonable and prescribing lower rates whereby the plaintiff's income would be reduced by approximately $2,100,000 annually. In so finding . . . the Commission declined to give and did not give consideration or effect to the reproduction cost . . . or to the fair value of said property, but, except for lands constituting less than 5% in value of the property, . . . took into consideration for the purpose of determining the rate base . . . only the past or historical cost." The commission applied for rehearing. Its petition indicates no claim that it did find value or that the court erred in holding that it did not; nor does the petition suggest that historical cost is value or was found or intended by the commission to be the value of the property. Indeed it sought a rehearing on the ground that the court failed to find the value of the property.

There is nothing in the commission's statement as to the jurisdiction of this Court, Rule 12, or in its briefs

here to indicate that it ever claimed or now claims that it found present value or that historical cost was not the sole basis of its calculations. Reversal is sought, not on the ground that the court erred in holding that the commission failed to find the value of the property, but upon the claim that the court is without power to restrain the enforcement of the prescribed rates "unless it be found that the enforcement of the order will result in the actual confiscation of the utility's property."

But that contention is directly contrary to our decisions. It may be taken as certain that if in truth it could claim that it did base its determination on present value, the commission would rely on that fact, for then it would not be necessary to have overruled, distinguished, explained away, glossed over or disregarded the line of decisions rightly followed by the lower court.

As to reproduction cost.—It is true that sometimes estimates of present cost of construction are not reasonably made and are therefore worthless as evidence of value.[12] It is also true that, when reasonably made, estimates of reproduction cost as of the valuation date constitute good evidence of present value.[13]

In *Missouri ex rel. S. W. Bell Tel. Co.* v. *Public Service Comm'n,* 262 U. S. 276, we said (p. 287): "It is impossible to ascertain what will amount to a fair return upon properties devoted to public service without giving consideration to the cost of labor, supplies, etc., at the time the investigation is made. An honest and intelligent forecast

---

[12] *Minnesota Rate Cases,* (1913) 230 U. S. 352, 452; *Lindheimer* v. *Illinois Tel. Co.,* (1934) 292 U. S. 151, 163, 164.

[13] *Minnesota Rate Cases,* (1913) 230 U. S. 352, 452, 455; *Missouri ex rel. S. W. Bell Tel. Co.* v. *Public Service Comm'n,* (1923) 262 U. S. 276, 287, 288; *Bluefield Co.* v. *Public Service Comm'n,* (1923) 262 U. S. 679, 691, 692; *Standard Oil Co.* v. *Southern Pacific Co.,* (1925) 268 U. S. 146, 156; *McCardle* v. *Indianapolis Water Co.,* (1926) 272 U. S. 400, 410; *Los Angeles Gas Co.* v. *Railroad Comm'n,* (1933) 289 U. S. 287, 307,

of probable future values made upon a view of all the relevant circumstances, is essential. If the highly important element of present costs is wholly disregarded such a forecast becomes impossible. Estimates for to-morrow cannot ignore prices of to-day."

In *McCardle* v. *Indianapolis Water Co.*, (1926) 272 U. S. 400, the court said (page 410): "It is well established that values of utility properties fluctuate, and that owners must bear the decline and are entitled to the increase. The decision of this court in *Smyth* v. *Ames,* 169 U. S. 466, 547, declares that to ascertain value 'the present as compared with the original cost of construction' are, among other things, matters for consideration. But this does not mean that the original cost or the present cost or some figure arbitrarily chosen between these two is to be taken as the measure. The weight to be given to such cost figures and other items or classes of evidence is to be determined in the light of the facts of the case in hand. By far the greater part of the company's land and plant was acquired and constructed long before the war. The present value of the land is much greater than its cost; and the present cost of construction of those parts of the plant is much more than their reasonable original cost. In fact, prices and values have so changed that the amount paid for land in the early years of the enterprise and the cost of plant elements constructed prior to the great rise of prices due to the war do not constitute any real indication of their value at the present time. . . ."[14] The passage which includes the statement quoted on page 398, *ante,* of this Court's decision just given, follows: "Undoubtedly, the reasonable cost of a system of water-

----

[14] The opinion here cites: *Standard Oil Co.* v. *Southern Pacific Co.,* (1925) 268 U. S. 146, 157; *Georgia Ry.* v. *Railroad Comm'n,* (1923) 262 U. S. 625, 630, 631; *Bluefield Co.* v. *Public Service Comm'n,* (1923) 262 U. S. 679, 691–692; *Missouri ex rel. S. W. Bell Tel. Co.* v. *Public Service Comm'n,* (1923) 262 U. S. 276, 287.

works, well-planned and efficient for the public service, is good evidence of its value at the time of construction. And such actual cost will continue fairly well to measure the amount to be attributed to the physical elements of the property so long as there is no change in the level of applicable prices. And, as indicated by the report of the commission, it is true that, if the tendency or trend of prices is not definitely upward or downward and it does not appear probable that there will be a substantial change of prices, then the present value of lands plus the present cost of constructing the plant, less depreciation, if any, is a fair measure of the value of the physical elements of the property. The validity of the rates in question depends on property value January 1, 1924, and for a reasonable time following. While the values of such properties do not vary with frequent minor fluctuations in the prices of material and labor required to produce them, they are affected by and generally follow the relatively permanent levels and trends of such prices."

The estimate of reproduction cost that the company submitted to the commission in this case is not before us. It is referred to in the commission's report, but it is not disclosed sufficiently to enable this Court to decide whether it was made reasonably, was admissible in evidence or was entitled to any weight. This Court may not speculate concerning it. The record in this case and earlier reports of the commission above referred to compel the conclusion that no estimate of reproduction cost as of valuation date would have influenced the commission to modify or abandon the basis of historical cost.

The commission was bound by our decisions to ascertain and consider present cost as compared with original cost of construction. It refused to do so. The method it followed conflicts with fundamental principles established here in that it condemned the company's existing rates as excessive and prescribed lower ones without any

basis of fact to warrant that action. When the State, acting through the commission, set aside existing rates and ordered lower ones for the future, it exerted power to take, or to compel use of, private property for service of the public. Due process required just compensation— rates sufficient to yield a reasonable rate of return on the value of the property used to furnish the gas. Without a finding of value it is impossible to ascertain the required amount. To take mere cost of physical elements, instead of total value, and to deduct development expenses from revenue instead of including in value the amount found properly attributable to intangible elements and going value, and then, because of that error, to fix a rate of return on historical cost greater than would be required on value, is to leave the order without known or discoverable foundation. It is to make individual views as to what is just serve in place of the definite principles. The formula followed by the commission prevents consideration of present value or of the estimated present cost, in comparison with the original; i. e., the historical cost of the property. The commission gave no weight to the company's evidence of present cost of construction. It made no investigation to ascertain, did not attempt to find and would not use, present cost or present value. It seems to me very clear that, save merely to reject it as inadmissible, the commission refused to pay any attention to the company's evidence of reproduction cost.

The commission having failed to find value, our decisions required the district court to enter the decree appealed from.

In *Northern Pacific Ry. Co.* v. *Dept. Public Works* (1925), 268 U. S. 39, the superior court and the supreme court of Washington upheld an order of the state commission reducing railroad rates for intrastate transportation of logs as against attack by the carriers on the grounds

that the order was made without evidence and that the rates were confiscatory. This Court held the order would deprive carriers of their property without due process of law, upon the sole ground that the commission found cost of service without any evidence, or upon evidence that did not clearly support the finding. We said (p. 44): "The mere admission by an administrative tribunal of matter which under the rules of evidence applicable to judicial proceedings would be incompetent, *United States* v. *Abilene & Southern Ry.,* 265 U. S. 274, 288, or mere error in reasoning upon evidence introduced, does not invalidate an order. But where rates found by a regulatory body to be compensatory are attacked as being confiscatory, courts may enquire into the method by which its conclusion was reached. An order based upon a finding made without evidence, *Chicgo Junction Case,* 264 U. S. 258, 263, or upon a finding made upon evidence which clearly does not support it, *Interstate Commerce Commission* v. *Union Pacific R. Co.,* 222 U. S. 541, 547, is an arbitrary act against which courts afford relief. The error under discussion was of this character. It was a denial of due process." That decision was reached without regard to any question of confiscation.

*Chicago, M. & St. P. Ry. Co.* v. *Public Utilities Comm'n,* (1927) 274 U. S. 344, presented the question whether an order of the Idaho commission reducing railroad rates for intrastate transportation of logs would deprive carriers of their property without due process of law. On the carriers' appeal to the state supreme court, the action of the commission was upheld. Following the state practice, the case was there heard on the record made before the commission. The evidence introduced by the carriers was sufficient to warrant a finding that as to the lines of all the carriers, the intrastate log rates were low in comparison with rates on other commodities, and that as to two of the carriers they were confiscatory. But

the state court held the commission authorized to reduce the rates without finding them unjust or unreasonable. And, as to the carriers' insistence that the prescribed rates were confiscatory, it ruled that, even if the evidence showed existing rates insufficient, the prescribed lower rates would not necessarily be confiscatory, and supported that view by the suggestion that the intrastate haul from forest to saw mills was only one step in production and transportation to markets in other States.

Writ of certiorari brought the case here. We reversed the judgment of the state court, and in the opinion said (p. 350): "But, as appears from their opinions, the respondent [commission] and the court refused to consider and give weight to that evidence because, as they held, the intrastate log rates were not to be dealt with separately but were to be considered in connection with the interstate lumber rates, and because the carriers made no showing as to the gains or losses resulting from the interstate transportation. That cannot be sustained . . . This case is in principle the same as *Northern Pacific* v. *Dept. of Public Works.* . . . It is impossible to sustain the refusal to consider the evidence introduced by the carriers to show that the rates in question are too low and confiscatory. The commission and the court erred in holding that the reasonableness or validity of the intrastate log rates depends on the amounts received by petitioners for the interstate transportation of lumber. It is clear that the methods by which respondent reached its conclusion were arbitrary and constitute a denial of due process of law."

In *West* v. *C. & P. Tel. Co.*, (1935) 295 U. S. 662, the company brought suit in the federal district court for Maryland to set aside as confiscatory an order of the Maryland commission reducing telephone rates. The controversy involved value, depreciation expense, and return. The commission made no appraisal of the prop-

erty, but attempted to determine present value by translating the dollar value of the plant as it was found in an earlier case, as of December 31, 1923, plus net additions in dollar value in each subsequent year, into an equivalent dollar value at December 31, 1932, its theory being (p. 667): "Value signifies in rate regulation the investment in dollars on which a utility is entitled to earn." After pointing out fundamental defects in the commission's method of finding value, we held that the case was controlled by the principle announced and applied in *Northern Pacific Ry. Co.* v. *Dept. Public Works* and *Chicago, M. & St. P. Ry. Co.* v. *Public Utilities Comm'n.* No decision here has challenged the principle established by these cases. *West* v. *C. & P. Tel. Co., supra,* 675.

I cannot refrain from protesting against the Court's refusal to deal with the case disclosed by the record and reasonably to adhere to principles that have been settled. Our decisions ought to be sufficiently definite and permanent to enable counsel usefully to advise clients. Generally speaking, at least, our decisions of yesterday ought to be the law of today.

I would affirm the decree of the district court.

MR. JUSTICE MCREYNOLDS joins in this dissent.